IRWIN *v.* DUGGER.

Opinion delivered February 2, 1920.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.—Findings of fact made by a chancellor will not be reversed on appeal, unless they are against the preponderance of the evidence.

2. FRAUDULENT CONVEYANCES — TRANSACTIONS BETWEEN HUSBAND AND WIFE.—Transactions between a husband and wife affecting the rights of creditors, especially where the husband is insolvent, are to be scrutinized with care in passing upon the question of good faith, and the burden is upon the wife to show her good faith.

3. HUSBAND AND WIFE—HUSBAND USING WIFE'S PROPERTY.—Where a wife allows her husband to use her property for a long time as his own, she will not be allowed to claim it as against his creditors.

4. FRAUDULENT CONVEYANCES—FAILURE TO RECORD DEEDS.—The mere facts that a debtor did not record a deed to him of land, and that his wife and son did not record deeds from him, are not of themselves sufficient evidence of fraudulent purpose as to constitute fraud in law, but are circumstances tending to impeach the want of good faith of the parties.

Appeal from Cleburne Chancery Court; *Lyman F. Reeder,* Chancellor; affirmed.

STATEMENT OF FACTS.

M. M. Irwin, doing business as Heber Hardware & Furniture Company, brought this suit in equity against J. E. Dugger, Sarah C. Dugger, and M. G. Dugger, to set aside certain deeds which it is alleged J. E. Dugger executed to his co-defendants in fraud of the rights of his creditors. The facts, so far as are necessary to test the

the correctness of the decision of the chancellor, are substantially as follows:

On the 15th day of March, 1917, the North Arkansas Townsite Company executed to J. E. Dugger a deed to lot 1, in block 14, in the town of Miller, Arkansas. The consideration in the deed was $100 and this was the true consideration. Twenty-five dollars were paid in cash, and the balance was to be paid in deferred payments. This deed was not filed for record until the 14th day of December, 1918. At the time J. E. Dugger purchased the lot it was understood that he would sell the west 50 feet of it to his son, M. G. Dugger, for $50. His son paid him $25 in cash, which was used by J. E. Dugger in making his cash payment on the lot. On May 26, 1917, J. E. Dugger executed a deed to M. G. Dugger for the west 50 feet of said lot 1 and delivered the deed to M. G. Dugger on that day. This deed was not filed for record until the 20th day of February, 1918. On May 31, 1917, J. E. Dugger executed a deed to his wife, Sarah C. Dugger, to the east 100 feet of said lot 1 for the consideration of $175, and the further consideration of the lumber and money she had furnished to erect a storehouse on the lot, and the payment of the balance of the purchase money to the North Arkansas Townsite Company. This deed was not filed for record until the 20th day of February, 1918. Both J. E. Dugger and Sarah C. Dugger were witnesses in the case and testified as to the transaction complained of without objection being made to their testimony.

According to the testimony of J. E. Dugger, his wife paid him $175 for the east 100 feet of lot 1, in block 14, Miller, Arkansas. She had furnished the money and lumber which had been used in erecting a storehouse on said lot. She also furnished the money with which to pay the balance of the purchase money; M. G. Dugger, his son, having furnished the money with which to make the initial payment, which was $25. After the storehouse was erected on the lot, J. E. Dugger and his son, J. R. Dugger, engaged in business in it from about April 1,

1917, to October 1, 1917. At the time J. E. Dugger made the conveyances to Sarah C. Dugger and M. G. Dugger, he was indebted to M. M. Irwin in some amount, and later became indebted to him in the sum of $253.87. On August 25, 1917, M. M. Irwin filed a suit against J. E. Dugger and obtained judgment against him for $253.87 and the accrued interest on September 21, 1917. J. E. Dugger was insolvent. He further claimed that the suit brought against him by the plaintiff caused his insolvency, and if it had not been brought that he could have paid his own debts and the debts of his firm in the ordinary course of business.

On cross-examination J. E. Dugger stated that he did not purposely withhold his deed from the townsite company from the record, but simply did not record it, as frequently happened with other deeds; that he was not in conspiracy with his wife to withhold any of the deeds from record, and that he delivered to her the deed to the east 100 feet of said lot on the day it was executed; that he received $175 for the lot besides the original purchase price.

Sarah C. Dugger in every respect corroborated the testimony of her husband, and it was shown that she had a farm of her own from which the lumber was taken to erect the storehouse on the lot in question.

D. B. Bailey, county and circuit clerk of Cleburne County, was the son-in-law of the Duggers. He testified that he had in his keeping some money belonging to his mother-in-law and gave to her $175 the last of April, or the first of May for the purpose of purchasing the lot in question.

M. G. Dugger testified that he built a blacksmith's shop on the west end of the lot which he had purchased from his father. He said that he paid $50 for the lot. All of these parties denied that they had withheld their deeds from record for the purpose of assisting J. E. Dugger in defrauding his creditors.

The chancellor found the issues in favor of the defendants, and it was decreed that the complaint should be dismissed for want of equity. The plaintiff has appealed.

*Mortimer Frauenthal,* for appellant.

1. The conveyance from Dugger to his wife was fraudulent. 49 Ark. 20; 68 *Id.* 162; 74 *Id.* 161-186; 101 *Id.* 573; 106 *Id.* 230; 108 *Id.* 164; 129 *Id.* 396; 132 *Id.* 268; 133 *Id.* 224; *Ib.* 250; 105 Miss. 720; 67 Ark. 105; 48 *Id.* 410; 50 *Id.* 42; 62 *Id.* 26; 86 *Id.* 225; 66 *Id.* 98; Kirby's Dig., § 3658.

2. The conveyance to Mrs. Dugger is presumed to have been voluntary. 132 Ark. 126, and fraudulent as to creditors. 134 Ark. 241.

3. The circumstances were such as to charge Mrs. Dugger with notice of the fraud. 58 Ark. 446; 32 *Id.* 251; 23 *Id.* 258. A purchaser after such record would not be an innocent purchaser. 113 Ark. 100; 75 *Id.* 223.

A discharge in bankruptcy does not protect Dugger as to the property in question. 3 R. C. L., § 90; 39 Sup. Ct. Rep. 472; 254 Fed. 150. The proceeding in bankruptcy was *in rem.* 123 N. E. 370; Brandenburg on Bankruptcy, § 11; 183 Fed. 913; 210 S. W. 976. See also 117 Ark. 20; 3 R. C. L., § 145; 98 Me. 401; 145 U. S. 29; 139 N. Y. S. 853, App. Div. 36; 72 N. H. 22; 54 Atl. 705; 196 Fed. 970; 254 *Id.* 356; 97 S. E. 830.

The property should be ordered sold to pay plaintiff's debt. 103 Ark. 105; 61 *Id.* 189; 55 *Id.* 116; 90 *Id.* 236.

*George W. Reed* and *Lawrence Neill Reed,* for appellees.

Appellant by proving his claim in bankruptcy and sharing with other creditors had no claim to base this suit. A discharge in bankruptcy can not be collaterally attacked on the ground of failure to include some of the bankrupt's assets in his schedule. 73 Ark. 483; Collier on Bankruptcy, p. 174; Black on Bankruptcy, p. 88; Loveland on Bank., p. 785. It is presumed that Dugger was notified of J. E. Dugger's petition for discharge, and it was too late to attack collaterally the act of the court. 74 Ark. 516. The discharge bars all debts. 122 N. E. 310; 232 Mass. 122; 50 S. E. 654; 104 S. W. 379; 96 Atl.

73; 139 N. W. 883. The burden is on the plaintiff to show that the discharge is not operative as to him. 238 U. S. 21; 224 Fed. 242; 81 N. E. 1060; 245 U. S. 626. A debt evidenced by judgment is provable in bankruptcy. Bankr. Act (1898), sec. 63a; 6 Am. Bankr. Rep. 46; 117 Ark. 17; 122 Fed. 232.

If a judgment is rendered upon an unsecured claim within the four months period, it becomes null and void upon a debtor being adjudged a bankrupt. Collier, Bankruptcy, p. 786-7; 188 U. S. 486; 9 Am. Bank. Rep. 476; 12 Id. 330; 11 Id. 54; 10 Id. 83; 121 Fed. 910. Here there was no fraud; the deed from a husband to wife for a valuable consideration is valid. 111 U. S. 772.

HART, J., (after stating the facts). It is the settled rule of this court that the findings of fact made by a chancellor will not be reversed on appeal unless they are against the preponderance of the evidence.

It is true that transactions between a husband and wife affecting the rights of creditors, especially where the husband is insolvent, are to be scrutinized with care in passing upon the question of good faith, and the burden is upon the wife to show her good faith. *Bunch* v. *Crowe,* 134 Ark. 242.

This court has also frequently decided that a wife who allows her husband to use her property for a long time as his own land will not be allowed to claim it as against his creditors. *Cowling* v. *Hill,* 69 Ark. 350, and *Goodrich* v. *Bagnell Timber Co.,* 105 Ark. 90.

In the case at bar it was satisfactorily established that the east part of the lot in question was paid for by Mrs. Dugger with her own means and for her own benefit. The same is true with regard to the purchase of the west part of the lot by the son. The record does not show that these deeds were executed for the purpose of giving J. E. Dugger a fictitious credit, or that they were withheld from record for that purpose or for the purpose of enhancing his assets and thus to enable him to contract debts which he could not pay. On the contrary,

all the parties deny that the deeds were withheld from record and concealed in order to avoid impairing J. E. Dugger's credit. There is nothing to show that the plaintiff or the other creditors of J. E. Dugger were induced to give credit to him on the faith that he owned the storehouse or lot in question. The mere fact that the deeds were not recorded is not of itself sufficient evidence of such fraudulent purposes as to constitute fraud in law. Such act is of course a circumstance tending to impeach the want of good faith of the parties. In testing the good faith of the transaction it is necessary to consider the particular situation of the parties and the intent as indicated by all of the facts and circumstances in the case as well as the direct testimony of the witnesses. These conveyances were executed by J. E. Dugger to his wife and son the latter part of May, 1917, and the plaintiff brought suit against him on August 25, 1917. Dugger testified that he owed a part of this sum at the time he made the conveyances.

The evidence does not disclose that the plaintiff or any other creditor of J. E. Dugger, furnished him credit on the faith that he owned the lot in question and the house situated thereon, and the shortness of time that elapsed between the conveyances to his son and wife and the institution of a suit by the plaintiff on his indebtedness negatives the idea that the conveyances were in fraud of his creditors.

It follows that the decree will be affirmed.