STATEMENT BY THE COURT.
This suit was instituted in the Craighead Chancery Court by R. L. Johnson, appellant, against the Young Men's Building Loan Association and C. W. Claunch and C. L. Claunch, appellees, seeking to recover on two promissory notes executed by the building and loan association and indorsed by appellee, C. L. Claunch, and others. One of the notes was originally for the sum of $10,000 and the other was for the sum of $2,000. Certain *Page 431 
payments were made on the notes prior to the filing of the suit, but the aggregate amount of these payments is not in controversy. Another suit was filed by the Chase National Bank and the banking commissioner in charge of the American Trust Company of Jonesboro against the same defendants seeking similar relief. The two suits were consolidated for trial and were determined by the chancellor against the contention of the appellant and the Chase National Bank.
The cases were presented to the chancellor upon the theory that a conveyance made by C. W. Claunch and his wife, Mary A. Claunch, to the defendant, C. L. Claunch, under date of January 12, 1923, was fraudulent and void as against the rights of the appellant. The trial court found against the contention of appellant, and this appeal is prosecuted to reverse this decree.
Since the only question presented for review is a determination of a question of fact, it will be necessary to review at some length the testimony.
C. W. Claunch testified, in effect, that Mary A. Claunch was his wife, and that she departed this life on January 5, 1931; that C. L. Claunch was their son; that they had one other child, but that she died in infancy; that for a long number of years he and his wife were in the hotel business in the town of Jonesboro; that more than 20 years ago they determined to erect a new hotel building in Jonesboro; that prior to their marriage Mary A. Claunch was a widow and operated the American Hotel in Jonesboro, and that she owned at that time a two-story frame house and a cottage, which two properties were valued at $9,000; that this hotel property which was owned by his wife at the time of their marriage was operated by them jointly for some 21 years, and until they erected the Claunch Hotel in Jonesboro; that on April 20, 1909, his wife purchased lots 3 and 8 of Moore's subdivision of lot 2, block 15, Flint's Addition; that in 1910 he purchased lot 4 in the same addition, and they erected their new hotel upon this property; that the value of his wife's property, or about $9,000, was paid by her into the new hotel building; that afterwards his wife and he purchased lots 9 and 10 of the same subdivision *Page 432 
and paid therefor $13,500; that the deed was made to the witness and his wife jointly; that this $13,500 was paid by him and his wife out of funds derived from the operation of the new hotel, and that their son, C. L. Claunch, furnished either $900 or $1,100; that in 1912 his wife purchased lots 6 and 7 of the same subdivision, which was deeded to him and his wife jointly. On this property is a one-story building. In 1917 his wife bought the west half of the southeast quarter of section 16, township 15 south, range 5 east, and took title thereto in her own name. All these properties were conveyed in a deed under date of January 12, 1923, to their son.
Witness further testified that when he purchased lot 4 and part of lot 3, upon which the new hotel was built, he intended to have the conveyance made to him and his wife jointly. When asked why he and his wife had executed the deed of January 12, 1923, to their son, the witness answered: "Well, my wife and I had been talking about our boy a lot, and, like lots of other people, we had all the confidence in the world in him, and we decided that, if either of us died, he would have to step in and be the sole manager of everything, and we made this deed giving him the property."
Witness further testified that at the time this deed was executed he did not owe any debts to any one, neither did his wife owe a dollar; that he had no intention whatever of defeating any creditors, because he had none, and did not expect at that time to ever have any creditors; that sometime during the year 1928 he became an indorser for the building and loan association for certain indebtedness, and this was the first indebtedness that he had created since the execution of the deed to his son in 1923; that Charles, their son, was about 17 years old when the deed was executed; that witness prepared the deed from himself and wife to their son, and they both acknowledged it before Mr. Barnett, a notary public, at the First National Bank in Jonesboro; that, prior to making the deed, he discussed the matter with the late Judge R. H. Dudley, an attorney of Jonesboro, and that he advised him that it was not necessary to record the deed since he and his wife owed no debts; that he and *Page 433 
his wife continued to operate the property for their son from the time the deed was executed in 1923 until they leased the same to Mr. Smith several years afterwards.
Witness further testified that, when they executed the deed to their son, "we put it in the safe at the hotel. My wife, son and I all knew the combination, and all had access to the contents of the safe. My son's mother told me she had explained it all to him, but I did not tell him."
Witness further testified that all tracts of land, regardless of who held the nominal title, were purchased with the joint efforts and with the joint money of himself and wife; that nothing was reserved about the title to the property except its management; that witness managed the property during the minority of his son; that his son went off to school in September, 1923; that the son had access to the deed at all times after its execution and could have had actual possession of the deed if he had wanted it; that, after his' wife died in March, 1931, he had the deed placed of record; that he and his wife attended to all the property for their son up to the time of his wife's death; that he and his wife agreed before the deed was executed in 1923 that if he should die his wife could not look after the property, and if she should die that he could not look after it; that he told no one about this except Judge Dudley; that at the time this deed was executed he had no idea of becoming surety for the building and loan association or any one else; that his and his wife's understanding was that the deed was to be kept off the record until after one or the other of them passed away; that there was no reason for this, but that it was their understanding and agreement; that the son executed a power of attorney to him in January, 1931; that he and his wife would discuss matters about the property with their son after the execution of the deed and would confer with him about the business interests; that he and his wife paid the taxes which were assessed against the property and kept no account thereof against the son; that witness had no property after this deed was placed of record; that he began carrying the bank account in the name of his son in March, 1931. *Page 434 
Witness further testified that he and his wife, on March 20, 1930, executed a lease on the hotel property to H. E. Smith and wife, which lease contained the following clause:
"First parties undertake and warrant that they have good title to all property, both real and personal, included in this contract and good right to convey or lease same, and do warrant to second parties quiet and undisturbed possession in and to said hotel property and appurtenances therewith connected during the term of said lease."
Charles L. Claunch testified, in effect, as follow:
That he is 25 years old, a resident of Chattanooga, Tennessee, and is an attorney at law; that he is the only child of Mary A. and C. W. Claunch; that his father and mother made him a deed to all the property in controversy on January 12, 1923; that he has discussed it in a general way at different times during the past several years, and that he understood all along that he owned the property; that he understood all along that the deed was delivered at the time it was executed; that during all years since its execution it has been accessible to all the family, part of the time in the safe at the hotel and part of the time in a deposit box in the bank; that his mother discussed business matters with him at various times since he reached the age of discretion; that his mother was a woman of considerable business capacity, and he always regarded her as the business head of the family; that he went to school in Virginia in 1923 and began practicing law in Chattanooga after his graduation; that he knew all along that his father and mother were handling, renting and managing the property; that it was satisfactory with him; that the new hotel property was purchased with the proceeds of his mother's property prior to the marriage of his father and mother; that his mother was active in the management of the new hotel and had an aversion to creating debts, and never became surety on any paper; that she owed no debts in 1923 and did not owe any at the time of her death in 1931; that she told witness about the execution of the deed and where it was; that she discussed the property with him *Page 435 
as his property and relied upon the execution of the deed as conveying it to him; that he had taken particular notice of the deed on several occasions while it was in the safe at the hotel; that the details of handling the property since the execution of the deed have been in his father's hands; that since recording this deed his father and mother have drawn checks on his account of rents to the extent of several hundred dollars; that his father is entitled to receive out of the property whatever he needs; "he is at liberty to draw checks against my bank account at Nettleton by signing my name by him. He has a power of attorney to sign checks, and can do it to any extent he pleases, provided he did not go contrary to my wishes, which he has never done."
Fred C. Barnett testified, in effect, that in January, 1923, he was assistant cashier of the First National Bank; that he knew Mr. and Mrs. Claunch and their son, Charles; that he was a notary public on January 1, 1923, and took the acknowledgment to the deed from Mr. and Mrs. Claunch to their son, Charles L. Claunch; that the date of the deed, January 12, 1923, was its true date; when the deed was presented to him for acknowledgments witness remarked, "On the stationery it says, `The future proprietor,' and I remarked to him about the stationery: `You are giving him the hotel?' or something to that effect." That at the time this deed was executed he knew the business condition of the Claunches; that they had plenty of money; actual cash on deposit usually from four to six thousand dollars; didn't think he owed anything. "Mrs. Claunch was above an average business woman." That he figured the wife and Mr. Claunch operated the hotel jointly.
Upon the testimony outlined above, the chancellor held that there was an effectual delivery of the deed from C. W. Claunch and wife to their son, Charles L. Claunch, on January 12, 1923, and therefore dismissed the plaintiff's complaint for want of equity.
(after stating the facts). It is apparent from the foregoing statement of facts that but one question is presented here for determination, namely: Was there a delivery and acceptance of the deed dated January 12, 1923, from C. W. Claunch and wife to their son, C. L. Claunch?
The acceptance of the deed in the instant case will be presumed because the grant is beneficial to the grantee, and, in addition to this, his father or mother could have accepted the grant for him, the grantee then being a minor. Graham v. Suddeth, 97 Ark. 283, 133 S.W. 1023.
This court has clearly stated the rule in reference to the delivery of a deed as follows:
"Any disposal of a deed accompanied by acts, words or circumstances which clearly indicate that the grantor intends that it shall take effect as a conveyance is a sufficient delivery." Russell v. May, 77 Ark. 89, 90 S.W. 617.
The facts and circumstances in the instant case are to the following effect:
C. W. Claunch and wife had but one living child, the grantee in the deed of January 12, 1923. The wife and mother owned and contributed towards the purchase of this property equally with her husband. A very valuable portion of the property was owned by them under conveyances which effected an estate by the entirety. The mother and father desired to avoid the consequences of this estate by executing a deed to their only child, thereby preventing either survivor taking the title in the event of death.
It is perfectly evident that the mother joined in this deed with the specific intent of vesting a present title in the son because she could have had no other reason for executing the deed. She owed no debts at the time the deed was executed, and owed no debts at the time of her death in January, 1931. She had told her son of the deed and of her wishes on many occasions and had so advised her husband. The husband stands in no different light except he contracted certain surety liabilities beginning in 1928, some five years after the execution of this deed.
It is insisted on behalf of appellant that the retention of the deed by the grantors destroys their apparent *Page 437 
intention of delivery. This is not the case. It was the purpose of the grantors to retain possession of the property until the death of one or the other of them. This is not always inconsistent with the grant or intention of delivery of the deed.
This court held in Cribbs v. Walker, 74 Ark. 104,85 S.W. 244, quoting from the fourth headnote:
"The fact that a deed was found among the effects of the grantor at his death raises no presumption against delivery if the grantor reserved an interest in the property conveyed, and therefore had an interest in the preservation of the deed."
Since the grantors had the intention and purpose of retaining the possession of the property until the death of one or the other of them, they had the right to retain the deed to effectuate this purpose.
It is next insisted by appellant that the failure to have the deed recorded is fatal to the presumption of delivery. We cannot agree to this. This court held in Irwin v. Dugger, 142 Ark. 104, 218 S.W. 177, quoting from the fourth headnote:
"The mere facts that a debtor did not record a deed to him of land, and that his wife and son did not record deeds from him, are not of themselves sufficient evidence of fraudulent purpose as to constitute fraud in law, but are circumstances tending to impeach the want of good faith of the parties."
The recording of the deed in the instant case might have defeated the purpose of the grantors in retaining possession and control of the property until the death of one of them, and we think a fair explanation of it.
It is next insisted that the continued possession and control of the property by the grantors and their lease of the property for a term of years nullifies the apparent intention of delivery. Neither can we agree to this. Their continued possession and control was nothing more nor less than the enjoyment of the estate retained by them or which was intended to be retained and enjoyed.
No error appearing, the decree is affirmed. *Page 438