4-5860                                          138 S. W. 2d 380

Opinion delivered March 25, 1940.

*Oscar E. Ellis,* for appellant.

*Shelby C. Ferguson* and *John C. Ashley,* for appellee.

MEHAFFY, J. On February 1, 1939, the appellee, Laura Langley, filed this suit in the Izard chancery court against the appellants, Laura Thomas and others, to cancel a deed executed by her former husband, J. W. Langley, and to have her dower assigned. The appellee, the plaintiff in the suit below, was the widow of J. W.

—PAGE 220]

Langley who died in 1936, and the appellants are sisters and nieces and nephews of the said J. W. Langley.

J. W. Langley's mother was Nancy Higginbotham. Langley, himself, at the time it is alleged the deed was made, was unmarried, and his mother and an uncle lived with him. The land described in the deed was purchased, and the deed taken in the name of J. W. Langley. He occupied the land, paid the taxes, rented some of it and collected the rents for many years, during which time his mother lived with him.

The deed which appellee seeks to have canceled was never delivered to Mrs. Higginbotham and was found by the administrator of Langley's estate after his death, among Langley's papers, and the administrator had it recorded. The deed was made some time in 1919 and was filed for record April 6, 1936, after the death of Langley.

The appellee in her complaint not only alleged that the deed was never delivered, but she alleged also that if said deed were ever executed, it was executed with the intent to defeat her in her expectancy, was made while she and J. W. Langley were betrothed, and a short time before their marriage.

It appears from the evidence that the appellee and J. W. Langley had been keeping company with each other for several years, expecting to get married, but for some reason did not intend to get married until after Langley's mother, Mrs. Higginbotham, died. It is said that he had his mother living with him, had to care for her, and they were not married until after his mother's death.

The land described in the deed was purchased in 1919, and Mrs. Higginbotham died on March 5, 1928, and the appellee and J. W. Langley were married October 4, 1928.

Appellants filed demurrer and answer, and on June 24, 1939, the case was tried and a decree was entered canceling the deed and awarding dower to the appellee, giving her one-half of the lands of which J. W. Langley died seized.

The evidence shows that Langley paid the taxes, lived on the land in controversy, and his mother, Nancy Higginbotham, and an uncle, C. P. Wilson, lived with him until their death; that Langley claimed to own the lands and that he was a single man during the life of his mother, and married appellee six or eight months after his mother's death. Langley, his mother and uncle lived together on the land for many years; that he kept company with appellee for several years, and that Langley said that when his mother died they would be married. Mr. Galbreath rented the lands from Langley about 20 years ago, and paid the rent to Langley; Langley's mother died in 1928, and Langley and appellee married a short time thereafter. The appellee had threatened to sue Langley for breach of promise, and he discussed this with some of the witnesses. Langley died in 1936.

Appellants introduced testimony tending to show that the land in controversy was purchased with Nancy Higginbotham's money that she received from her husband's, Higginbotham's, estate. There is no evidence as to what estate Higginbotham left, what it was worth, nor how much money Mrs. Higginbotham had. Appellant's witnesses testified that Langley had told them he had made a deed to his mother, and that the land was originally bought with money from Jim Higginbotham's estate. There was also evidence by appellant's witnesses that J. W. Langley's estate was insolvent. Langley, when he died in 1936, was about 70 years of age.

It is first contended by appellants that the evidence is not sufficient to justify the chancellor in canceling the deed; but we do not think that the holding of the chancellor was against the preponderance of the evidence.

The late Chief Justice McCulloch, in the case of *Bray* v. *Bray,* 132 Ark. 438, 201 S. W. 281, said: "While the numerical weight of the testimony is against appellee, we do not think that there is a preponderance of the evidence against the finding of the chancellor in holding that there was not a delivery of the deed with intent to pass the title. We have said that the question of delivery is generally one of intention as manifested by

acts or words, and that there is no delivery unless there is an intention on the part of both of the actors in the transaction to deliver the deed in order to pass the title immediately to the land conveyed, and that the grantor shall lose dominion over the deed.''

To make a deed effective, there must be a delivery, actual or constructive, to the grantee or to some person for his use, during the lifetime of the grantor. *Hardin* v. *Russell,* 175 Ark. 30, 298 S. W. 481.

The appellants contend that there is no competent evidence showing that the deed was not delivered. The deed was made in 1919. Mrs. Higginbotham did not die until 1928, and during all that time Langley not only claimed to be the owner of the land, but he paid the taxes and collected the rents, and Langley did not die until 1936, some years after his mother's death. His mother, according to the evidence, was more than 80 years of age at the time she died.

This court recently said: ''It is elementary law that delivery is essential to the validity of a deed, but it is frequently a mixed question of law and fact as to whether there has been a delivery, and the law on the subject has been declared in a number of our cases.'' *Cavett* v. *Pettigrew,* 182 Ark. 806, 32 S. W. 808. In that case the court cited many authorities supporting that rule, and in the same case it is also said: ''The important question in determining whether there has been a delivery is the intent of the grantor that the instrument should pass out of his control and operate as a conveyance. The intent of the grantor is to be inferred from all the facts and circumstances adduced in the evidence. His acts and conduct are to be regarded in ascertaining his intent.''

We think when all of the evidence and circumstances are considered, there is ample evidence to show that there was no delivery of the deed. The deed was made in 1919, the mother died in 1928, and the administrator testified that he found the deed at Langley's home in his trunk, and then brought it and had it recorded; that this deed was with Langley's papers. Wallace, the

administrator was asked if he did not tell Mr. McJunkins that he did not know this deed was in existence until he found it, and he answered that he told him he had forgotten it; he was then asked if he did not tell McJunkins that he was expecting to find a deed to some more lands that he had made to his mother, that McJunkins had a mortgage on, and he answered, "Yes."

We also held in the case of *Graves* v. *Carlin,* 194 Ark. 473, 107 S. W. 2d 542, that the delivery of the deed was essential to its validity.

Appellants state that declarations showing delivery are admissible, but that declarations disputing delivery are inadmissible unless part of the *res gestae,* and cite several authorities; but the record does not show any declaration showing delivery.

It is next contended by appellants that there is no competent evidence entitling the appellee to recover one-half interest in all the lands owned by Langley at the time of his death. The undisputed evidence shows that the land involved is new acquisition, and that there were no children born.

Section 4421 of Pope's Digest reads as follows: "If a husband die, leaving a widow and no children, such widow shall be endowed in fee simple of one-half of the real estate of which such husband died seized, where said estate is a new acquisition and not an ancestral estate; and one-half of the personal estate, absolutely and in her own right, as against collateral heirs; but, as against creditors, she shall be endowed with one-third of the real estate in fee simple if a new acquisition and not ancestral, and of one-third of the personal property absolutely. Provided, if the real estate of the husband be an ancestral estate she shall be endowed in a life estate of one-half of said estate as against collateral heirs, and one-third as against creditors."

It is undisputed that J. W. Langley died intestate without issue in March, 1936, and that the appellee is his widow. While the administrator testified that the estate was insolvent, there is no evidence tending to show what debts he owed, and no evidence tending to

show that any claims had been probated against the estate, and this case was tried in June, 1939. The evidence does, however, show that there were other lands belonging to the estate.

We do not think the finding of the chancellor on either proposition is contrary to the preponderance of the evidence, and the decree is affirmed.