VAN HUSS *v.* WOOTEN.

4-7565                                    186 S. W. 2d 174

Opinion delivered March 19, 1945.

*Vol T. Lindsey,* for appellant.

*A. L. Smith,* for appellee.

Robins, J. The sole question in this case is whether a deed, executed by John M. Van Huss, deceased, on March 9, 1942, purporting to convey to appellant, J. D. Van Huss, a twenty-four acre farm in Benton county, Arkansas, was ever delivered in the lifetime of the grantor so as to vest title in appellant.

Appellee filed complaint in the lower court against appellant, alleging that she was the owner of this land by virtue of a will executed by John M. Van Huss, her brother, under which will all his property was devised to her, and that the deed to appellant, recorded after the death of John M. Van Huss, was void because it was never delivered to appellant; and she prayed for the cancellation of the deed as a cloud upon her title. Appellant in his answer denied the allegations of the complaint and alleged that the deed was delivered to him by the grantor.

The court found that the "said deed is void . . . because said deed was never delivered to the defendant in the lifetime of the deceased, but came into the possession of the defendant from an unauthorized source after the death of the deceased, and that no title passed to the defendant by said deed; that defendant paid no consideration for said deed." From the lower court's decree cancelling the deed and vesting title to the property in appellee this appeal is prosecuted.

There is little dispute in the testimony. Under the will of John M. Van Huss, a bachelor and a resident of Pampa, Texas, he devised and bequeathed all of his property to appellee, his sister, with whom he had made his home for about seven years before his death. This will was executed on December 20, 1939, and after his death was duly probated in the county of his residence in Texas and also probated, as a foreign will, in Benton county, Arkansas. The deed involved herein was executed on

March 9, 1942, and it was retained in the actual possession of the grantor, John M. Van Huss, until his death. John M. Van Huss remained in possession of the land, and, on June 16, 1942, mortgaged it to secure a note for $150 to Elizabeth F. Smith. He paid this debt and obtained release of the mortgage on November 28, 1942.

After the death of John M. Van Huss, which occurred on February 14, 1943, appellant, appellee and other relatives opened a suitcase belonging to John M. Van Huss, which he had kept near his bed in the home of appellee, and found therein, among other effects and papers, the deed here involved. Appellant took charge of the deed and caused it to be recorded.

It was not contended by appellant that the deed had ever been manually delivered to him by his uncle, the grantor, but he testified that his uncle had told him about executing the deed and that he paid his uncle one dollar to make the deed legal. Appellant testified: "He told me when he drawed his last breath to go to his suitcase and get it . . . Q. Did he discuss with you why he didn't give you the deed? A. He wanted to take care of it himself 'til he passed away. Q. He said he wanted to have the use of the property, have control of it? A. Yes." Appellant is contradicted as to this by Judge Cary, the attorney in Texas who attended to the probating of the will there: Judge Cary testified that appellant told him that he (appellant) knew nothing about the deed until after his uncle's death. Although appellant admitted talking to Judge Cary about the matter and that Judge Cary told him the deed "wasn't any good," and admitted that as a result of this conversation he unsuccessfully tried to get a quitclaim deed from appellee, appellant did not deny that he had told Judge Cary that he (appellant) knew nothing of the existence of the deed until after the death of John M. Van Huss. H. B. Van Huss, father of appellant, testified that his brother, John M. Van Huss, said: "My deeds and papers are fixed and when I die I want these papers delivered like I've got them fixed . . ." Nowhere in the testimony is it shown that anyone, other than John M. Van Huss, during

his lifetime, ever had possession of the deed or that he ever surrendered control over it as long as he lived.

Our decision in the case of *Johnson v. Young Business Men's Building & Loan Association*, 187 Ark. 430, 60 S. W. 2d 925, is cited by appellant as supporting his contention that there was a delivery of the deed to appellant. But in the Johnson case it was shown that the deed there involved was placed in a safe, the combination of which was known to the grantee, and to which safe the grantee at all times had access. It further appeared in that case that the grantee was the seventeen-year-old son of the grantors, and, for that reason, it was not entirely inconsistent with a delivery of the deed for the parents, the grantors, after delivery of the deed, to have kept it in their custody for their minor son. In the instant case there was no testimony to indicate that appellant, who was an adult living in his own home, ever had the deed in his possession or ever had access to his uncle's suitcase, in which the deed was kept.

The general rule as to the sufficiency of delivery of a deed is thus stated in 16 Am. Jur., p. 510: "While delivery may be by words or acts, or by both combined, and manual transmission of the deed from the grantor to the grantee is not required, it is an indispensable feature of every delivery of a deed, whether absolute or conditional, that there be a parting with the possession of it and with all power of dominion and control over it, by the grantor, for the benefit of the grantee at the time of the delivery. There is no delivery in law where the grantor keeps the deed in his own possession with the intention of retaining it, particularly if he keeps possession of the property as well; dominion over the instrument must pass from the grantor with the intent that it shall pass to the grantee . . . Where the proof fails to show that the grantor did any act by which he parted with the possession of the deed for the benefit of the grantee, the question of intent becomes immaterial; . . . but if he [grantor] does not evidence an intention to part presently and unconditionally with the deed, there is no delivery." In the same volume, at page 516, it is said: "It is indispensable

to the delivery of a deed that it pass beyond the control or dominion of the grantor; and where a grantor retains a deed which he executes in his possession and control until his death without doing anything to indicate an intention to deliver it, it is void for want of a delivery."

In Corpus Juris Secundum, vol. 26, p. 246, § 45, it is said: "A deed executed by the grantor with the intention of having it take effect after his death, but which he retains in his possession or control without transfer of a present interest, will be ineffectual to pass title for want of delivery."

Mr. Thompson, in his work on Real Property, says: "The burden of proving the delivery of a deed rests upon the party who claims that it was delivered. . . . Proof that a deed was executed, and that it remained in the possession of the grantor, is no evidence that it was ever delivered, but on the contrary it is some evidence that it had not been delivered." Section 4121. . . . "Where a deed is found in the possession of a grantor, a presumption arises that it was never delivered, and the burden of proving delivery is upon the party claiming under the deed." Section 4136.

In Devlin on Deeds, § 260a, the rule is thus stated: "No title passes for want of delivery where the grantor held possession of the deed and died possessed of the premises, without the doing or saying of anything indicating that title should pass. It is a presumption that the parties understand that delivery is necessary."

Judge Wood, speaking for this court, in the case of *Maxwell* v. *Maxwell*, 98 Ark. 466, 136 S. W. 172, said: "There is no delivery unless what is said and done by the grantor and grantee manifests their intention that the deed shall at once become operative to pass the title to the land conveyed, and that the grantor shall lose dominion over the deed."

In the case of *Taylor* v. *Calaway*, 186 Ark. 947, 57 S. W. 2d 410, it was held (headnote 1): "In order to constitute delivery of a deed, it must be the intention of

the grantor to pass the title immediately, and that the grantor shall lose dominion over the deed."

The proof in the case of *Thomas* v. *Langley*, 200 Ark. 220, 138 S. W. 2d 380, showed that Langley in 1919 executed a deed conveying his land to his mother. It was not shown that the deed was ever actually delivered to the grantee, but after Langley's death the deed was found among his papers. Langley's mother lived with him on the land until her death in 1928, and shortly afterwards Langley married. There was testimony tending to show that the land was bought with money belonging to Langley's mother, that Langley had stated that he had used his mother's money in buying the land and that he had deeded the property to her. We held in that case that the evidence was insufficient to establish delivery of the deed.

In the case of *Ransom* v. *Ransom*, 202 Ark. 123, 149 S. W. 2d 937, we said: "It was said in the early case of *Miller* v. *Physick*, 24 Ark. 244, that 'A deed to be operative must be delivered. The act of signing and sealing gives it no effect without delivery. The delivery is a substantive, specific, and independent act, which may be inferred from words alone, or from acts alone, or from both together, and though there is no particular form in which to make it, still enough must be done to show that the instrument was thereby considered to have passed beyond the legal control of the maker, or his power to revoke it.' That holding has never been departed from or modified in any manner. On the contrary, it has been reaffirmed in many subsequent cases."

Applying to the testimony in the case at bar the rules, as to essentials of a valid delivery of a deed, set forth in the above authorities, we conclude that the finding of the lower court is not against the preponderance of the testimony. There was no proof that the deed was ever out of the actual possession of John M. Van Huss during his lifetime or that by any word or act he ever surrendered dominion or control over this deed. On the other hand, the testimony tends to establish his firm intention to retain possession of and control over the deed until his death. With the evidence showing such an inten-

tion on the part of the grantor, coupled with his actual retention of the deed throughout his life, as well as a continued possession of the land by the grantor, it cannot be said that there was such a delivery of this deed to appellant as to make it effective as a conveyance.

The decree of the chancery court is correct and it is affirmed.