BURNISS SHAW WILSON ET AL *v.* J. F. McDANIEL
ET AL

5-5126                                     449 S. W. 2d 954

Opinion delivered January 26, 1970

*Tompkins, McKenzie & McRae,* for appellants.

*W. D. McKay,* for appellees.

CARLETON HARRIS, Chief Justice. The land in issue in this litigation is a 40-acre tract situated in Columbia County. Appellants are three great grandchildren of H. U. Hancock, who died intestate in 1905, seized of this property. Hancock's wife, Eunice (or E. E.), held a life estate, but, it is asserted by appellants, was given a deed

from all of the Hancock children, J. H. Hancock, W. J. Hancock, Katie Tye and Carrie M. Frazier, conveying their interest, the deed being joined in by Henry Scott and B. C. Scott, grandchildren, being two of five sons of Palestine Scott, a deceased daughter of H. U. and Eunice. This deed was dated November 18, 1905, and purportedly conveyed a 22/25 interest in the lands, but the deed was not recorded until 1930. Eunice Hancock thereafter died sometime prior to June 23, 1908, leaving a will which was admitted to probate on the date last mentioned. Under the terms of this will, she devised all of her real estate to her son, J. H. Hancock, for his lifetime, and at his death to her granddaughters, Myrtle Hancock and Bertha Bethany, share and share alike, and at their deaths to their children, or to the children of either, should one or the other die without issue. Bertha, 73 years of age, is still living, and has no issue. Myrtle (Shaw) died in 1965, leaving three children, Burniss Shaw Wilson, Beatrice Shaw Haley, and Byford Shaw. These, together with Mary Shaw, wife of Byford, are the appellants herein. An exchange of instruments in 1913 between J. H. Hancock and his daughters, Bertha and Myrtle, resulted in Bertha's receiving the life interest of her father and Myrtle to the 40 acres here involved. Thereafter, during the same year, Bertha conveyed her interest in this land to A. S. Frazier. During the latter part of the year, Frazier and his wife (a daughter of H. U. and Eunice Hancock) purported to convey the land to J. R. McDaniel. J. F. McDaniel, who claimed ownership at the time of the institution of this suit,[1] was a son of J. R. McDaniel, and had been given a deed by his brothers and sisters, these grantors and grantee being all of the heirs of J. R. McDaniel. Subsequently, Bertha Bethany quitclaimed her interest in the land to J. F. McDaniel. McDaniel's predecessors entered into possession of the lands in 1913, and appellees and predecessors have held possession and paid all taxes since that time. Appellants instituted suit, contending

---

[1] J. F. McDaniel died and the cause was revived in the name of his widow, Rozena McDaniel, his sole devisee.

that they are the owners of an undivided 22/50 interest in the involved acreage; that McDaniel only had an undivided 3/25 interest, and an estate for the life of Bertha Bethany in an undivided 22/50, appellants holding the remainder. Appellees contend that they are the owners of the land by adverse possession. Both sides moved for summary judgment, supporting their respective positions by affidavits, exhibits, and depositions. The court granted a summary judgment to appellees, holding that the "McDaniel" title ripened prior to 1930 (when the deed from the Hancock children to Mrs. Eunice Hancock was recorded); that the recordation was the first notice the McDaniels had of any remainder claim to the property created by the will of Eunice Hancock, since that will did not specifically describe the lands left to the son, J. H. Hancock, but simply devised to him "all ot my real estate." Title was quieted and confirmed in McDaniel as against any claim of appellants, and their complaint was dismissed for want of equity. From the decree so entered, appellants bring this appeal. For reversal, it is simply asserted that the claim of appellants is not barred by limitations, and they are entitled to partition.

Let it be remembered that this is a summary judgment. We have said many times that a summary judgment is proper only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Weathers* v. *City of Springdale*, 239 Ark. 535, 390 S. W. 2d 125. Accordingly, in determining whether this judgment should be affirmed, we are interested simply in ascertaining whether there is any genuine issue as to any material fact. Very quickly, we hold that there is a disputed material fact question not answered by the pleadings, affidavits, exhibits, or depositions. This question is whether the November, 1905, deed to Eunice Hancock from her children and two grandchildren, was delivered to her during her lifetime. Of course, a deed is inoperative unless there has been delivery to the grantee. *Van Huss* v.

*Wooten,* 208 Ark. 332, 186 S. W. 2d 174. A number of cases are discussed in this opinion, including *Thomas* v. *Langley,* 200 Ark. 220, 138 S. W. 2d 380, wherein this court said that the proof showed that Langley in 1919 executed a deed conveying his land to his mother. From the opinion:

"It was not shown that the deed was ever actually delivered to the grantee, but after Langley's death the deed was found among his papers. Langley's mother lived with him on the land until her death in 1928, and shortly afterwards Langley married. There was testimony tending to show that the land was bought with money belonging to Langley's mother, that Langley had stated that he had used his mother's money in buying the land and that he had deeded the property to her. We held in that case that the evidence was insufficient to establish delivery of the deed."

Further, quoting from the earlier case of *Taylor* v. *Calaway,* 186 Ark. 947, 57 S. W. 2d 410, it was stated:

"In order to constitute delivery of a deed, it must be the intention of the grantor to pass the title immediately, and that the grantor shall lose dominion over the deed."

It is admitted by appellants that appellees and those under whom they claim took possession of the lands in 1913, and have continued in possession and paid the taxes since that time. As previously stated, appellees claim title on the basis of adverse possession, but appellants contend that they (appellants) had no right of entry on the property, nor any cause of action, until the death of their mother, Myrtle Shaw (also known as Myrtle Hooper) in 1965, this occurrence giving them an undivided 22/50 in fee. They also claim an additional undivided 22/50, subject to appellees' rights during the lifetime of Bertha. It is thus seen that appellants' contention for reversal, as well as their own claim to the

property, is predicated on our cases which hold that a right of action in one who owns a remainder interest does not accrue until the death of the person holding a life estate. A number of cases are cited in support of this contention, including *Smith* v. *Maberry,* 148 Ark. 216, 229 S. W. 718, *LeSieur* v. *Spikes,* 117 Ark. 366, 175 S W. 413, and *Hayden* v. *Hill,* 128 Ark. 342, 194 S. W. 19. In this last case, the court pointed out that a remainderman has a right to attribute the possession of the premises involved by some third party, to some sort of contract with the life tenant. It then added:

"* * * Until the death of the life tenant, no duty in law is imposed on a remainderman to inquire from the party in possession whether he is a disseisor. During the life tenancy he has a right to treat the occupant of the land as a licensee."

This is a consistent holding in this state, though the next sentence after the above quotation in *Hayden* is:

"In the instant case, it is conceded that appellees did not know the appellant was in possession of the real estate."[2]

We agree that under the present record in this case, appellants' argument is sound, and the Chancellor erred in granting the summary judgment; however, this holding does not necessarily mean that appellants should prevail; that question is not settled for the reason that J. H. Hancock's and Myrtle Hancock's life estates in this property were dependent upon the validity of the

[2]See also the Florida case of *Commercial Building Company* v. *Parslow et al,* 112 So. 378, where the Supreme Court of Florida held that laches or limitations may run against a remainderman who knows of a life tenant's repudiation of that status. As to the statement in *Hayden,* appellants say, in effect, that it is dictum: "The fact that in *Hayden* the court mentions that appellees were not aware of appellant's possession is actually immaterial. Had they known of it, they would have been under no duty to inquire and under no duty to take any action until the termination of the life estate."

deed to their mother and grandmother, respectively, Eunice Hancock.

Appellants insist that they should prevail on the strength of the Eunice Hancock deed. Normally, we do not pass upon an order denying a summary judgment, since we have held that such an order, being interlocutory, is not appealable. *Widmer* v. *Fort Smith Vehicle and Machinery Corporation,* 244 Ark. 971, 429 S. W. 2d 63.[3] However, as pointed out in *Widmer,* certain interlocutory orders are reviewable in conjunction with a final judgment; an order granting a summary judgment is a final order, and therefore appealable, and in determining the litigation now before us, it is necessary to discuss ·appellants' alleged grounds for summary judgment in order to show that there are unresolved material issues, which can only be disposed of after a trial.

The Hancock deed, of course, to have been valid, must have been delivered to Eunice Hancock during her lifetime. To establish this fact, appellants rely upon the statement appearing in *Smith* v. *Scarbrough,* 61 Ark 104, 32 S. W. 382, where this court, quoting the case of *Scobey* v. *Walker,* 15 N. E. 674, said:

"The rule is well established that, where a document purporting to be a duly acknowledged deed, with regular evidence of its execution upon its face, is found in the hands of the grantee, or if such deed is found upon the proper records, a presumption arises that it was delivered at the time it bears date, or at some time prior to the date of its acknowledgment."

In other words, as of now, appellants rely upon the fact that the deed to Eunice Hancock was recorded. On the other hand, appellees contend that no presumption arises, since the deed was not recorded until 22 years

---

[3] If one moves for a summary judgment, and the court denies the motion, such an order, standing alone, is not appealable, and the appellant can only assert error by appeal when the case has been finally adjudicated.

after the grantee's death. Of course, the evidence presented at the hearing for summary judgment is liberally construed in favor of the party opposing the motion, and he is given the benefit of all favorable inferences, which might reasonably be drawn from the evidence. *Ramsourer* v. *Midland Valley R. Co.*, C. C. A. 8th, 1943, 135 F. 2d 101. The recording of the deed would at the most, simply create a presumption, and there are inferences in some of the exhibits and affidavits, which are contrary to the contention that the deed was delivered.

For instance, in September, 1914, all of the Scott children, including the two who had purportedly conveyed their interest to Eunice Hancock, instituted suit against J. H. Hancock, Myrtle Hancock, and Bertha Bethany and her husband, in which they alleged that Eunice Hancock owned no interest in certain lands (including the 40 acres in issue), except a dower and homestead interest, or a life estate, which expired at her death. The complaint asserted that the defendants were trying to deny the plaintiffs' title to their interest in the land. The defendants answered, admitting that three of the Scott children held a 3/5 of a 1/5 interest, but that B. C. Scott, and H. F. Scott (apparently Henry) held no interest. The execution of the deed by the Hancock heirs, including the two Scott children, is then asserted. In a substituted complaint, it was again alleged that Mrs. Eunice Hancock did not own any interest in the land further than a life estate, and therefore could not have conveyed same by her will. In a decree dated February 19, 1916, the Columbia Circuit Court held with the plaintiffs, and declared all five Scott children as owners of a 1/5 undivided interest in the lands. The basis of the rendition of this judgment is not set out in the judgment, but it is at once evident that the court did not, at least as far as B. C. and H. F. Scott were concerned, consider the deed to Eunice Hancock to be valid. Another inference can also be drawn from the deed itself. One of the grantors mentioned in the deed is W. A. Scott —but W. A. Scott did not sign the instrument. The ac-

knowledgments also show that some signed on one date, and others on a subsequent date. These circumstances, together with the fact that the deed was not recorded until 22 years after the death of Eunice, somewhat raise an inference that the deed was not delivered during the lifetime of Eunice Hancock; that is, these circumstances raise the possibility that the children and grandchildren of Eunice, individually agreed to convey their interest to her, but such agreement was conditioned upon the premise that everyone would join in executing the deed; since this did not happen the deed was never delivered. It has been held that a delivery is incomplete where made by only some of the parties to a deed which shows on its face that it was intended to be jointly executed so that all should be bound by its covenants. *Consolidation Coal Co.* v. *Yonts* (C. C. A. Ky.) 25 F. 2nd 404.

In the deposition of Byford Shaw, one of the appellants herein, he stated that he believed his mother (Myrtle Hancock Shaw) got the deed from her father (J. H. Hancock). On the one hand, this could mean that the deed had remained in the possession of one of the grantors. On the other hand, J. W. Hancock was the devisee of his mother's will, and his possession of the deed might have no significance,*since he was given a life estate in his mother's property under her will.

We think enough circumstances have been pointed out to clearly show that pertinent and material issues are unresolved, and the case should proceed to trial.

Reversed and remanded.

---

*The will itself does not name an executor, and the order admitting the will to probate, in the record before us, does not show that an administrator was named.