## FELTON AND WIFE v. LEIGH ET AL.

1. MISTAKE: *Reformation. Vendor's lien.*
   When by mistake of the draftsman of a deed the grantor is made to convey a wrong tract of land, a court of equity will correct the mistake and reform the deed to convey the tract intended, and will, at the same time, declare and enforce the vendor's lien upon it for the unpaid purchase price.

2. EVIDENCE: *Presumption from silence of party.*
   When a party, against whom material facts within his own knowledge are charged in the pleading and in the testimony, fails to testify in his own behalf, this is a suspicious circumstance against him.

APPEAL from *Lonoke* Circuit Court, in Chancery.
Hon. F. T. VAUGHAN, Judge.

*U. M. & G. B. Rose* and *Geo. Sibley*, for appellants.

The evidence establishes fraud beyond question.

Leigh, the principal defendant, though charged in the complaint and testimony with the grossest fraud and dishonesty, did not venture to testify in his own behalf, and this is a circumstance of great weight. See *107 U. S., 262; 113 Mass., 96; Lawson on Pr. Ev., p. 120.*

*John C. & C. W. England* and *R. J. Lea*, for appellees.

The testimony fails to show any fraud on part of appellees.

Appellee filed a sworn answer denying all the allegations of fraud charged, and it was not necessary for him to testify.

SMITH, J. Thomas G. Harrison and his three married sisters had inherited from their father eighty acres of land. Their mother was also the owner in her own right of one hundred and twenty acres. With a view to provide her children with homes, the mother was willing to put her lands into hotchpot, and receive for her share a life estate in the part that should be allotted to her son. The two tracts contained five lots of forty acres each, lying contiguous, and were of the aggregate value of $1000, but were not susceptible of convenient division into four parts. Mrs. Felton, one of the children, therefore sold her interest to Leigh, the husband of one of her sisters. A partition was then agreed upon, by which two whole lots and the half of a third lot, all of which were specified, were to be al-

lotted to the Leighs, and the remaining lands to be divided, in certain definite proportions, between the others. Being illiterate persons and unable to transact such business intelligently, they called in a justice of the peace, upon whom they relied to draw the papers to carry into effect their intentions. Leigh having in the meantime sold the half lot which fell to him to Thomas G. Harrison, the same was, with the knowledge and consent of Mrs. Felton, conveyed directly to Thomas G., along with his own allotment proper, by the other parties in interest. Leigh directed the share he had purchased to be conveyed to his wife; and the justice, instead of including the two lots in one deed, drew a conveyance of one lot to Mrs. Leigh and of the other to Mrs. Felton, and then a reconveyance of the latter by Mrs. Felton to Mrs. Leigh. He then drew two notes for $125 each, which Leigh signed and delivered to Mrs. Felton, purporting to be for the purchase money of the lot which the justice had assigned to her in his division. The two lots varied greatly in value. One lay in the prairie, and was worth not exceeding $50. The other was in the timber, and worth about $375. When the notes fell due Leigh was unable to meet them. And when the papers were examined it was discovered that Mrs. Felton had been placed in the attitude of selling the comparatively worthless tract in the prairie, and that an attempt had been made to confine her lien to that tract. She, therefore, filed her bill, charging that the above-mentioned result had been brought about by the fraud of Leigh and the connivance of the justice, and praying for a reformation of the instruments so as to make them conform to the intention of the parties, and for the enforcement of her lien as vendor against the entire tract held by Mrs. Leigh. Leigh and his wife denied the charge of fraud and collusion. The circuit court found that the prairie lot and the half lot

subsequently sold to Thomas G. Harrison had been set apart to Mrs. Felton as her share, and that, no fraud having been practiced, her lien must be restricted to those tracts.

The clear preponderance of the testimony is that Mrs. Felton was no party to the partition further than to join in the necesssry conveyances to carry it out. No lands were allotted to her; but a double share was allotted to the Leighs on account of her previous sale to them. Such was the understanding of all the parties to the arrangement except Mrs. Leigh. What was sold to Leigh was her undivided one-fourth share of the two hundred acres. This interest was afterwards defined, by the voluntary partition, to one half of the one hundred acres that were assigned to the Leighs. It is, therefore, to this that her vendor's lien attaches. And her right to relief does not depend altogether upon her ability to prove the active fraud of Leigh in the matter. It may be based on the blunder of the justice of the peace. The instruments do not express the agreement of the parties. There is, indeed, reason to believe that Leigh never intended to pay for the land. He did not venture to testify in his own behalf; and this is a suspicious circumstance in cases of this kind. *Bowden v. Johnson, 107 U. S., 262; McDonough v. McNeil, 113 Mass., 96.*

Mrs. Felton has no recourse upon the twenty acres which Leigh sold to Thomas G. Harrison; nor does she claim any right to resort to it. That parcel was sold by her consent, and the price of it has been paid to Leigh.

The decree is reversed and cause remanded, with directions to reform the instruments in accordance with this opinion, and to declare and enforce a lien in favor of plaintiffs upon an undivided one-half interest in the two tracts of forty acres each that were conveyed to Mrs. Leigh.