STREET IMPROVEMENT DISTRICT No. 359 *v.* LITTLE ROCK.

4-3623

Opinion delivered December 10, 1934.

*S. L. White,* for appellants.

*Ed I. McKinley, Jr.,* and *Carl F. Jaggers,* for appellee.

SMITH, J. This suit was brought by the Commissioners of Street Improvement District No. 359 of the city of Little Rock against the city of Little Rock to recover the amount of certain benefit assessments alleged to have been wrongfully deposited by the collector of the city with the American Exchange Trust Company, a banking institution which failed soon after the deposit was made. The deposit was made September 30, 1930, and the bank failed November 17, 1930.

There is but little dispute in the testimony except as to the inferences to be drawn from it, which is to the following effect: The district now has only two commissioners, but it does not appear for what length of time it has had only that number. Mrs. John E. Martineau is a member of the board of commissioners, and is the chairman thereof. A. E. Bush is the other member, and is the secretary. Judge John E. Martineau acted for his wife, the chairman of the board, and signed her name to all papers requiring that action. She knew nothing of the affairs of the district.

By act No. 16, approved February 11, 1897 (Acts 1897, page 23), which appears as § 5702, Crawford & Moses' Digest, the collector of the city of Little Rock is ex-officio collector of all improvement districts within the corporate limits of the city. In this capacity James Lawson, the city collector, had made collections of the annual assessments of betterments for district 359, and had made settlements thereof by depositing the collections so made with the American Exchange Trust Company, of Little Rock, the duly designated depository of the district, to the credit of the district.

It was the custom of the trustees for the holders of the bonds of the various improvement districts in the city to notify the collector, and also the attorney for the district, of the amount of bonds maturing each year and of the interest thereon. This notice was always sent some time in advance of the date on which payments were due, and it was the custom, upon the receipt of such no-

tice, for the commissioners of the affected district, but, more frequently, for the attorney of the district, to call upon the collector for the proceeds of collections of betterment assessments. Upon this demand the collector would draw a check against his own collector's account in favor of the district, which, in some cases, would be delivered to the official making the demand. In other instances the check would be transmitted to the depository bank of the district for the credit of the district by the collector. The collector appears also to have engaged in. the practice, wholly unauthorized by law, when called upon for money to meet maturing obligations, to advance to the district the sum demanded, although he did not have enough funds belonging to the district in his hands to meet the demand, provided taxes in process of collection for the district were apparently sufficient to reimburse him when collected, for the advance.

On September 19, 1930, James Lawson, as collector, deposited with the depository bank, to the credit of district 359, the sum of $4,937.82. This deposit was a payment of all sums then in the hands of the collector to the credit of district 359, less the expense of collection. This deposit exceeded the requirements of the district to meet obligations maturing that year. On September 30, 1930, the collector made an additional deposit with the district's depositary of $2,500. Lawson died March 6, 1933, and it does not appear how or upon what demand this deposit was made. The American Exchange Trust Company, the depositary bank, closed its doors, as has been said, on November 17, 1930, and is even yet in process of liquidation, and only 45 per cent. of the deposits have been paid by the liquidating agent.

Pursuant to the requirement of the statute, the commissioners of district 359 filed with the mayor and council of the city of Little Rock a report dated September 29, 1931, "Of Collections, Delinquents and Disbursements for the Year 1931 (September 26, 1930, to September 30, 1931)." This report showed the deposit of the $2,500 item out of which this litigation arose.

This suit was filed on March 1, 1934, which is more than three years after the deposit was made. Judge

Martineau explained this delay by saying that he had no knowledge of the deposit of the $2,500 until that fact was disclosed by an audit of the district's affairs which he caused to be made in 1933.

Judge Martineau and the attorney for the district both testified that they did not request the collector to make the deposit, and did not know it had been made until after the depository bank had failed. After that event occurred, the attorney for the district conferred with the collector about the deposit, and the collector declined to file the claim with the liquidating agent for the reason that the deposit was not his but belonged to the district. Thereupon the attorney prepared and filed with the liquidating agent a claim covering the deposit, and there has been paid thereon 45 per cent. thereof, the amount paid all other depositors.

The collector reimbursed himself for the advance out of collections for the ensuing year, and no question appears to have been raised about that action during Lawson's lifetime or until the filing of this suit.

It was stipulated that the city collector was chosen by and was responsible to the city council for his official actions. That the collector received personally no compensation for making collections for the improvement districts in the city from the districts, but was paid a salary by the city. After the collections are made there is deducted therefrom $5, the cost of the notice of collection, and the postage on tax notices sent to owners of the assessed property, then a gross deduction of 2 per cent. as cost of collection, which is paid into the city treasury. It was further stipulated that district 359 had a bond to secure its deposit given by the depositary bank signed by a surety company which has itself become insolvent, and that nothing has been collected or paid on said surety bond. This bond had been approved by the commissioners of the improvement district, who also selected and designated its depository without any participation by the city or any officer or agent of the city.

Upon these facts the question presented for decision is whether the city should reimburse the improvement district for the loss sustained by reason of the de-

posit which it is alleged was unauthorized. The court below held that equity did not require that this be done.

It is true the money deposited did not belong to the district when the deposit was made; and it is true also that the attorney for the district and Judge Martineau, acting for his wife, who knew nothing of the affairs of the district, both testified that the collector was not requested to make the advance. The other commissioners do not testify, and there is no showing that they did not make the request. Lawson, the collector, who made the deposit, is dead, and can, of course, offer no explanation. *Smith* v. *Wheat,* 183 Ark. 169, 35 S. W. (2d) 335; *Lynch* v. *Stephens,* 179 Ark. 118, 14 S. W. (2d) 257.

It is an undisputed fact, however, as shown by the report of the district to the city council, that the deposit was made, and with the depositary which had been designated to receive and hold the funds of the district.

It is certain that the deposit was made for the benefit of the district, and the failure of all the commissioners to testify leaves open to grave doubt the question whether it would have been made except upon the request of the commissioners who have remained silent, especially in view of the custom shown by the testimony to exist of making deposits only and when requests so to do were made by some representative of a district. Moreover, through the delay in filing this suit the death of the collector has closed the mouth of a witness who could probably have explained the transaction. These circumstances, taken in connection with the fact that the report to the city council took credit for the deposit as having been made within the fiscal year in which it was actually made, and the subsequent filing of the claim therefor in the name and on behalf of the district with the liquidating agent, make it inequitable that the city should sustain the loss. There is a loss which must be sustained either by the city or by the improvement district, and in view of the facts recited that loss should, in our opinion, fall upon the improvement district, rather than the city, and the decree of the court below so holding will be affirmed.