GRAVES *v.* CARLIN.

4-4721

Opinion delivered July 12, 1937.

R. D. Smith and· W. G. Dinning, for appellants.

Peter A. Deisch and John C. Sheffield, for appellees.

BUTLER, J. N. T. Guthrie, in his life-time, was the owner of several tracts of land situated in Phillips and Monroe counties. He and his wife, Lula B. Guthrie, resided on the tract of land lying in Phillips county, consisting of about 244 acres. He died on September 12, 1932. On October 5 of that year a deed was filed for record and duly recorded on the records for deeds for Phillips county. This deed purported to have been executed by N. T. Guthrie and Lula B. Guthrie, his wife, to De La Graves, Dorris May Graves and Gloria Gertrude Graves, bearing date of July 10, 1929, and conveying the lands above referred to. This action was instituted in the Phillips chancery court by Hester Guthrie Carlin, Julius B. Guthrie and Oscar B. Guthrie, naming the grantees in the afore-mentioned deed as defendants. The complaint alleged that the said deed was not executed by N. T. Guthrie and not delivered to the defendants during the lifetime of the grantor, and prayed that the deed be canceled and plaintiffs have possession of the property, they being the children and sole heirs-at-law of N. T. Guthrie.

The answer denied the allegations of the complaint and the case was submitted upon the complaint and answer, certain stipulations of counsel and the evidence adduced. The trial court found that N. T. Guthrie died intestate leaving surviving his widow, Mrs. Lula B. Guthrie, and the plaintiffs as the only surviving heirs-at-law; that on October 5, 1932, there was placed of record on the official deed records of Phillips county, Arkansas, a purported deed conveying to the defendants certain lands (describing them) and that said purported deed was not executed and delivered by N. T. Guthrie during his life-time and no valid conveyance of the property described had been made to defendants. The trial court

accordingly decreed that the title to the lands in question be vested in the plaintiffs subject to the dower and homestead rights of the widow and that the deed be canceled. From that decree this appeal has been prosecuted.

In support of their contention, plaintiffs caused to be taken the depositions of Mrs. Hester Carlin and her husband, Watkins L. Carlin, and Mrs. Effie Guthrie. At the time of the taking of these depositions objection was made as to the competency of the witness, Watkins L. Carlin, and to certain of the testimony of Mrs. Carlin and Mrs. Effie Guthrie. Before the hearing, these exceptions and objections were filed, but there appears to have been no formal order of the trial court made in this regard. The material parts of the testimony of these witnesses was practically to the same effect relating to statements and admissions made by Mrs. Lula B. Guthrie and of Bryan Graves, her son and father of the defendants, on the day of the death of N. T. Guthrie and on subsequent dates. The objection to the testimony of all the witnesses was that the same was hearsay and not made in the presence of defendants, and, in addition, that Watkins L. Carlin was the husband of one of the plaintiffs and, therefore, under the statute an incompetent witness.

The undisputed facts, briefly stated, are as follows: Mrs. Lula B. Guthrie was the second wife of N. T. Guthrie. At the time of their marriage she was a widow with a son, Bryan Graves. There was no issue from her second marriage. N. T. Guthrie had been previously married and the plaintiffs are his children by his first marriage and his sole surviving descendants. At the time of the marriage of N. T. Guthrie and Mrs. Lula B. Graves, Bryan Graves seems to have been a minor. He lived in the Guthrie home until he became grown and was married. After his marriage, he and his wife resided with the Guthries except at a time when Mrs. Graves was ill and away for her health. The defendants (appellants), are the children of Bryan Graves by this marriage and from their early infancy, resided in

the home of their step-grandfather and were reared by him with affection and indulgence. At the time of the execution of the purported deed the oldest of these children was about twelve years of age and the plaintiffs had approached middle life and presumably had not resided with their father since their majorities or marriages. The evidence tends to show that Mr. Guthrie had reared his children carefully and while they only visited him at infrequent intervals, there is no indication that the natural state of affection did not exist between him and them.

From the date of the purported deed Mr. Guthrie continued to occupy and use the lands in question, as he had previously, until the day of his death. During this time the lands were assessed and taxes paid as formerly.

The circumstances surrounding the death of N. T. Guthrie are somewhat peculiar. He was killed by his step-son, Bryan Graves, on the 12th of September, 1932, apparently early in the day. On learning of the tragedy, Mrs. Carlin, who lived in Memphis, went immediately to the Guthrie home, and also perhaps her two brothers, although the evidence is not clear as to this. They manifested no vindictive feelings and, in relating what occurred, Mrs. Carlin testified in effect that her step-mother was greatly agitated apparently on her son's account as he seemed to have been dependent, more or less, upon Mr. Guthrie. Mrs. Carlin said that Mrs. Guthrie exclaimed, "Oh, Hester, this is awful—it leaves my poor son penniless. Won't you please have mercy and help my poor boy? He has nothing to take care of his children on." In answer to a question regarding what disposition, if any, Mr. Guthrie had made of his estate, Mrs. Guthrie stated that nothing had been done by him. Two days later, in answer to direct questions in the presence of Bryan Graves, she again made the same statement, and was assured by Mrs. Carlin that Bryan Graves would be allowed to share equally with the heirs.

Mrs. Effie Guthrie, a sister-in-law of N. T. Guthrie, corroborated the testimony of Mrs. Carlin, stating that

she was present and heard the conversation between Mrs. Carlin and Mrs. Guthrie and that Bryan Graves was present.

Mrs. Lula B. Guthrie was the only witness who testified on behalf of the appellants. She testified as to the devotion exhibited by her husband to his step-grandchildren and introduced a letter written by him to the wife of Bryan Graves, who was at that time an invalid and away from home for her health. This letter expressed great affection for Mrs. Graves and concern for her condition and gave the assurance that she need not worry about her children; that he would care for and educate them and that he intended that they should have all of his estate. This letter was dated, Marvell, Arkansas, February 22, 1927. With respect to the execution of the purported deed, witness testified that she remembered the year of its execution which was 1929, before Mr. Molitor, a justice of the peace and notary public of the county; that after its execution and acknowledgment the deed was not placed of record during the lifetime of her husband, and in answer to question by counsel for appellants, "Will you state why," she answered, "Because he wanted to use the property, so that he could handle the property during his lifetime, and he gave me the deed and asked me to keep it as long as he lived, then to put it on record; in case of my death first he agreed that he would have it placed of record." Witness further stated, "As we had agreed, as he had asked me to do, I had kept the deed in my possession until he died, and I sent it here by my son and had him to put it on record." On cross-examination, witness stated: "He told me to put the deed away and keep it, and in case of his death before mine for me to have the deed placed of record; that if my death occurred before his, he would place the deed of record. Whichever one died first, the surviving one should place the deed of record, don't you understand now?" Witness testified that her son, Bryan Graves, died October 3, 1933; that he was living with her at the time she gave him the deed and that he lived with her the last year of

his life; that she did not know what became of the deed after she gave the same to him; that she had searched his papers, but had been unable to find it; that her oldest grand-child was about seventeen at the time of the giving of her testimony.

It is essential to the validity of a deed conveying real property that there be a delivery, actual or constructive, to the grantee, and whether a deed has been delivered is a mixed question of law and fact dependent largely upon the intention of the parties thereto. *Lacotts* v. *Quertermous*, 84 Ark. 610, 107 S. W. 167; *Russell* v. *May*, 77 Ark. 89, 90 S. W. 617. In order to constitute an effective delivery there must appear from the circumstances an intention on the part of the grantor to surrender control and dominion over the deed. This court, in *Harding* v. *Russell*, 175 Ark. 30, 298 S. W. 481, quoted the following rule with approval: "Each case must stand on its own peculiar facts. It (the delivery) may be actual or constructive; by word or act, to the grantee directly or to another for him, and a delivery may sometimes be made without the grantee (grantor) parting with the custody of the instrument. It is sufficient if, after the grantor has signed, sealed and acknowledged the deed, he make some disposition of it from which it clearly appears that he intended that the instrument should take effect as a conveyance and pass title."

The general rule is nowhere better stated than in the early case of *Miller* v. *Physick*, 24 Ark. 244, as fallows: "A deed to be operative must be delivered. The act of signing and sealing gives no effect without delivery. The delivery is a substantive, specific and independent act, which may be inferred from words alone, from acts alone, or from both together, and though there is no particular form in which to make it, enough must be done to show that the instrument was thereby considered to have passed beyond the legal control of the maker, or his power to revoke it."

If it be conceded that the testimony objected to by the appellants is incompetent, we must presume that the chancellor was not influenced by it, but considered

only the competent testimony. *Prall* v. *Richards,* 97 Ark. 135, 133 S. W. 595. The testimony of Mrs. Lula B. Guthrie, upon which appellants' case must depend, is not sufficient to establish a valid delivery under the rule cited, for it is clear that there was no intention on the part of the grantor to surrender control over the deed. We think, however, that the testimony of Mrs. Carlin and of Mrs. Effie Guthrie is competent if for no other purpose than to impeach the testimony of Mrs. Lula B. Guthrie. It is significant that Mrs. Lula B. Guthrie did not deny the testimony of Mrs. Carlin and Mrs. Effie Guthrie and their testimony tends strongly to establish the fact that Mrs. Lula Guthrie was not in possession of the deed at the time of her husband's death or at any time prior thereto and the question as to whether or not it was ever executed is unimportant.

The evidence on the whole case appears to support the decree of the trial court, and it is, therefore, affirmed.