RANSOM v. RANSOM.

4-6363, 4-6378 (consolidated)                    149 S. W. 2d 937

Opinion delivered March 31, 1941.

*Pickens & Pickens,* for appellant.

*W. D. Davenport,* for appellee.

SMITH, J.   The question presented on this appeal is the one of fact whether Dan M. Ransom, who died intestate January 13, 1940, had delivered five deeds to Edwin Ransom, or to Edwin's wife for him, with the intention of

thereby passing the title to the lands described in the deeds.

Edwin Ransom instituted suit against the administrator of the deceased to recover possession of the deeds. The administrator filed an answer and moved the transfer of the case to the chancery court. The administrator then filed another suit in the chancery court praying the cancellation of the deeds. The case brought in the circuit court was transferred to and consolidated with the case brought in the chancery court.

Edwin and Dan Ransom were brothers, and Eugene Ransom, the administrator, was Edwin's son. Eugene testified that before the death of his uncle Dan he assisted in checking the descriptions of the lands described in the deeds in controversy with certain old deeds of his uncle, and that the descriptions in the new deeds corresponded with those in the old ones. He further testified that his uncle Dan owned a safe to which he did not know the combination and he was unable to open it after his uncle's death, and that he employed a safe expert to open it. The expert drilled into the door of the safe, and finally broke the combination off after working for some time. When the safe was opened the deeds were found therein with other papers belonging to the deceased.

W. E. Radabaugh testified that he was a notary public, and was called in that capacity to prepare five deeds, which Dan Ransom signed and acknowledged before him as a notary public. He recognized the five deeds in question as those which he had prepared. This witness was asked if Dan Ransom stated his purpose in executing the deeds, and the answer was: "He said he wouldn't make a will because it was too darned easy broke." The witness further testified: "He (Dan) said if anything happened to him, 'I want Edwin to have it.'"

One of the deeds was dated November 8, 1938, two were dated December 20, 1938, and the remaining two January 5, 1939. One deed recited a consideration of $3,000, and another the same sum. The consideration recited in each of the other three was a thousand dollars,

making a total consideration of $9,000 for the five deeds. It is not contended that any part of this money was paid to the grantor.

The testimony in relation to the delivery of the deeds was to the following effect. Dan had a private room at the home of his sister, Mrs. Acklin, with whom he had resided for fourteen years or more. It was Christmas day, 1939, and a number of persons at Edwin's home. Dan took from a billfold five deeds and delivered them to Edwin's wife, who placed the deeds on the bed, where they remained until Mrs. Ransom returned them to Dan with the request that he place them in his safe. The most definite testimony was given by J. M. Alexander, who testified that Dan stated, when he delivered the deeds, that he was giving them to his brother Edwin for Christmas. No other witness so testified, and a number of persons testified that Alexander's reputation for truth and morality was not good. Others present in the room at the time were Lee James, Elmer Solida, and Clarence Ransom, a son, and Mrs. Ransom, the wife of Edwin. Another person present at the home testified that he saw Dan deliver some papers to Mrs. Ransom, but he did not know what they were.

James testified that when the deeds were delivered he (Dan) said he wanted Mr. Edwin to have his lands in case anything happened to him. Solida testified that he heard Dan say "If anything happened to him he wanted Mr. Edwin and his boys to have his land."

There is testimony from which it is fairly inferable that Dan was apprehensive that he would be sued for a large sum for damages; but the deeds did not convey all his lands, nor the major portion thereof, but they did convey about 1,500 acres, some of it in White county and others in Jackson or Independence county.

Mrs. Louzenia Roberson was a member of the party gathered at Edwin's home on this Christmas day, and she testified that she did not see any deeds delivered, and heard nothing about the delivery of the deeds, and that Alexander was not present.

We conclude, however, that a preponderance of the testimony shows that the deeds were signed and ac-

knowledged by Dan and were delivered by him to Mrs. Edwin Ransom; but the question in the case is whether they were delivered for the purpose of presently passing the title from Dan to Edwin.

The testimony is voluminous, and we shall not abstract it, but there are two statements made by counsel for Edwin in the course of the trial in the nature of stipulations which we do copy. Counsel for Edwin said: "If the court please, we will concede that, when Dan Ransom delivered these deeds, we didn't expect, then or after, to take possession of any of his land unless something happened to Dan Ransom, and that he intended to keep his land and use it as long as he lived and do what he pleased with it, and, whatever was left of it, his brother Edwin was to get—that is our contention—to let him have use of it, so that will save you having to prove all that."

Later in the progress of the trial counsel for Edwin said: "If the court please, I will admit on the part of the plaintiff, that, if Dan Ransom had lived, plaintiff would not have interfered with his collection of rents and profits from his farms, as he understood, and only contends, that he was to get the lands conveyed in the deeds in case something should have happened to Dan and not before."

It was further stipulated that on June 6, 1939, Dan conveyed to one London a tract of land described in one of the deeds; that on December 12, 1939, he conveyed to one Mrs. Helvering a tract of land included in another one of the five deeds; and that on December 4, 1939, he conveyed to one Osborne a tract of land described in one of the five deeds. These conveyances were all made, however, between the date the deeds were acknowledged and the date of their delivery to Mrs. Ransom at the Acklin home.

It does not appear that during the period of time intervening between the date of the delivery of the deeds and Dan's death, which occurred suddenly and accidentally, that Edwin exercised any act of ownership over any of the lands.

The court found that the deeds had been delivered for the purpose of passing title, and a decree was rendered in accordance with that finding, from which is this appeal.

Subsequent to this appeal a bill of review was filed in which it was sought to bring into the record testimony contradictory of certain testimony offered at the first trial. The most important part of this testimony is to the effect that on June 7, 1939, Dan had executed five other deeds to Edwin which were not treated by the parties as having conveyed the title to the lands which they described.

But apart from and without regard to the testimony taken in support of the bill of review, it is our opinion that the testimony does not establish the fact that the five deeds here challenged were delivered for the purpose of passing the title.

It was said in the early case of *Miller* v. *Physick*, 24 Ark. 244, that "A deed to be operative must be delivered. The act of signing and sealing gives it no effect without delivery. The delivery is a substantive, specific, and independent act, which may be inferred from words alone, or from acts alone, or from both together, and though there is no particular form in which to make it, still enough must be done to show that the instrument was thereby considered to have passed beyond the legal control of the maker, or his power to revoke it."

That holding has never been departed from or modified in any manner. On the contrary, it has been reaffirmed in many subsequent cases.

Through the industry of opposing counsel apparently all of our numerous cases on this subject have been cited, but we shall not review them. They apply the principle announced in the *Miller* v. *Physick* case, *supra*, to the facts of the particular cases.

One of the cases cited by appellee and relied upon as being directly in point is that of *Reynolds* v. *Balding*, 183 Ark. 397, 36 S. W. 2d 402, in which case the late Chief Justice HART said: "It is well settled in this state that, if a deed duly executed and so drawn as to convey

a present title is deposited by the grantor with a third person with directions to deliver it to the grantee after the death of the grantor, and the grantor reserves no dominion or control over the deed, the deed is not an attempted testamentary disposition, but is effective as a conveyance of the title as of the date when the deed is deposited. *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244; *Fine* v. *Lasater,* 110 Ark. 425, 161 S. W. 1147, Ann. Cas. 1915C, 385, and *Brown* v. *Brown,* 134 Ark. 380, 203 S. W. 1009.''

We reaffirm that holding, but there is a very important and controlling distinction between that case and this in that here the grantor did reserve dominion and control over the deeds. In the Reynolds case, *supra,* the deed had been recorded; here no one of the deeds had been. Not a dollar of the consideration recited in any one of the five deeds had ever been paid, and no act of ownership was ever exercised over any part of any of the lands conveyed. Indeed, it is stipulated that it was not intended that there should be. The stipulation is that Dan ''intended to keep his land and use it as long as he lived, and do what he pleased with it, and whatever was left of it his brother Edwin was to get.'' In other words, Dan, who had conveyed three tracts of land described in some one of the five deeds, reserved the right to convey any part or all of the remainder, and Edwin was to have at Dan's death ''whatever was left of it.'' This could have been done by a will, but not by a deed which was intended to and had passed title. A man may make a will disposing of all his property, and subsequently convey specific portions thereof; but not so when he makes and delivers a deed effective upon delivery. Here, it must be remembered that Dan was in the sole and exclusive possession of the deeds, which had never been recorded, and he had them in a safe to which no other person had access, and of which he only knew the combination. It is said that this possession was for Edwin's benefit. But for what benefit? The stipulation above copied answers that question, the answer being that it would be a conveyance of the land to Edwin

to be effective upon Dan's death provided Dan did not convey the lands to some other person before he died.

At § 122, p. 506, of the chapter on Deeds, 16 Am. Jur., it is said that "Nor is there a delivery of a deed sufficient to pass title to the grantee where the deed is given to the grantee with the intention that it shall become operative only on the death or survival of the grantor or the grantee, . . ." Annotated cases are cited in the note to this section which collect an innumerable number of cases on the subject. Much truer must this be in a case where, as here, not the grantee, but the grantor, has possession of the deeds, the understanding being, as is here stipulated, that the grantee will, upon the death of the grantor, take title only to such of the lands as the grantor had not conveyed to some other person, or "whatever was left of it."

In the case of *Taylor* v. *Calaway*, 186 Ark. 947, 57 S. W. 2d 410, we said: "The law as to the delivery of a deed is that, in order to constitute a delivery of a deed, it must be the intention of the grantor to pass the title immediately to the land conveyed, and that the grantor shall lose dominion over the deed. *Davis* v. *Davis*, 142 Ark. 311, 218 S. W. 827."

In the case of *Maxwell* v. *Maxwell*, 98 Ark. 466, 136 S. W. 172, the headnote reads as follows: "There is no delivery of a deed unless what is said and done by the grantor and grantee manifests their intention that the deed shall at once become operative to pass the title to the land conveyed and that the grantor shall lose dominion over the deed. Thus where a grantor executed a deed to her son, and left it at her lawyer's office, telling the grantee that it was there and promising to place it where he could get it if anything happened to her, and he without her knowledge or consent procured it to be recorded, there was no delivery."

A headnote in the case of *Davis* v. *Davis*, 142 Ark. 311, 218 S. W. 827, reads as follows: "To constitute delivery of a deed, there must be an intention to pass title to the land conveyed immediately, and that the grantor shall lose dominion over the deed."

130

We conclude, therefore, that there was no intention to deliver the deeds for the purpose of conveying the title to the lands which they describe, and the decree will be reversed and the cause remanded with directions to enter a decree conforming to this opinion.