WOODRUFF *v.* MILLER.

4-8288                                205 S. W. 2d 181

Opinion delivered November 3, 1947.

*Thomas F. Butt, Harvey L. Joyce* and *Glen Wing,* for appellant.

*Rex W. Perkins* and *G. T. Sullins,* for appellee.

GRIFFIN SMITH, Chief Justice. The appeal is from a decree that a deed executed by Mrs. Sarah A. Bales Cover was not delivered, notwithstanding the fact that Fred H. Woodruff for whose benefit, *prima facie,* it was executed, received the document at the grantor's direction.

Mrs. Cover died intestate August 31, 1945, owning certain real property. She had owned other property, some of which had been disposed of. When death occurred Mrs. Cover resided at Lincoln, Washington County. She had formerly lived in Fayetteville at 318 East Lafayette Street. This is the property described as part of lots five and six of the Masonic Addition. It was one of five tracts appellees claim Mrs. Cover owned at the time of her death, and is included with other descriptions in the deed executed August 7, 1941, under which appellants claim.[1]

Fred H. Woodruff, 64 years of age, is a farmer, wood-cutter, and laborer in general, living at Lincoln a short distance from the place selected as a home by his aunt, Mrs. Cover, when she moved from Fayetteville. In 1941, before going to Lincoln, Mrs. Cover wrote her nephew, requesting that he meet her at the bank in Lincoln. Mrs. Cover was accompanied by Mrs. Little M. Martin Hughes, who acted as a secretary, doing other incidental tasks, such as driving an automobile, running errands, etc. She served in this capacity from September 1939 until Mrs. Cover died.

August 7, 1941, Mrs. Cover and Mrs. Hughes went to the Lincoln bank. Mrs. Cover had some deeds or other papers containing descriptions of the property being dealt with. She explained to W. T. Shannon—then cashier of the bank, but now president—that she wanted a deed "made or changed", and that the property was to go to Fred H. Woodruff "and his bodily heirs". The heirs were named: Freddie Woodruff, Jr.; Vernon Eugene Woodruff, and James Monroe Woodruff; "their heirs and assigns". When the deed had been prepared it was signed by Mrs. Cover and indorsed "Executed in the presence of James English, Jr. [and] Mrs. Lillie M. Martin Hughes". Woodruff, Sr., handed Mrs. Cover

[1] A part of Lots 4 and 5, Block 4, Masonic Addition to Fayetteville, described by metes and bounds. Lot 2, Block 17, Original Town of Fayetteville. Part of the Southeast Quarter of the Southwest Quarter of Sec. 30, Township 15 North, Range 32 West, in Washington County, described by metes and bounds. Lots 3 and 4, Block 2, Rose Hill Addition to Fayetteville. Part of the Southeast Quarter of the Northeast Quarter of Sec. 8, Township 16 North, Range 30 West, in Washington County, containing one acre.

a dollar bill and Mrs. Cover directed Shannon to give the deed to Woodruff, which he did.

This deed was filed a few hours after Mrs. Cover died, for the purpose of having it recorded. It is undisputed that Mrs. Cover gave instructions to Woodruff not to record the deed during her lifetime; and, acting under this compulsion and seemingly acquiescing in Mrs. Cover's right to attach this condition to manual delivery, Woodruff accepted the document and retained it with his personal papers for more than four years.

During the interim between execution of the deed and death, Mrs. Cover dealt with the property as though no conveyance had been made. It is shown that on a previous occasion she had deeded lands to Woodruff, who held at his aunt's convenience and then reconveyed. It is intimated that Mrs. Cover was threatened with litigation [with possibility of a judgment against her] and for this reason she attempted to conceal her holdings. There was no substantial evidence to sustain this alleged motive, and it is not to be considered, although a deed was in fact made.

Litigation resulting in this appeal began when R. A. Miller, Lula J. Osborne, and Shelby Niccum brought an action in Chancery reciting that Mrs. Cover died intestate owning the real estate they described, including the residential property in Fayetteville. They were nieces and nephews of Mrs. Cover, and their aunt, as was alleged, had been fraudulently imposed upon by Woodruff when he procured the deed. Primarily, however, it was asserted that the deed was not delivered with intent that it should vest in Woodruff or his children title to any of the property, it being Mrs. Cover's purpose to retain control, with the right to sell, lease, give away, or otherwise utilize or make disposal. The prayer was that the deed be cancelled and the property partitioned.

Immediately following Mrs. Cover's death Woodruff was appointed administrator of the estate. He was succeeded by Pat Johnson.

Woodruff demurred to the complaint on the ground that a claim was pending in Probate Court and a sale of the property would be necessary to satisfy creditors.

Numerous pleadings were filed, including an amendment to the complaint in which all of the heirs of Mrs. Cover were named, or sought to be named. In the amendment A. A. Adams was made a party on allegation that shortly before her death Mrs. Cover leased to Adams the north half of a building at 29 North Block Street in Fayetteville. After the lease was executed a supplemental agreement relating to Adams' right to make alterations was executed. Adams demurred to the amended complaint. Woodruff filed what he termed ''an interpleader against the interpleaded defendant, Pat Johnson, as administrator''. It was alleged that the lease directed the monthly rentals of $25 to be paid to Woodruff—this being in the nature of an assignment. Woodruff contended that by reason of the assignment all rentals received by the administrator since August 30, 1945, should be paid to him.

July 25, 1946, Woodruff, acting for himself and as guardian of his minor children, brought an action in Washington Circuit Court, alleging that Mrs. Cover's deed of August 7th, 1941, conveyed to the plaintiffs a fee simple title to all of the property therein described. In disregard of this deed, said these plaintiffs, the grantor conveyed to Elbert H. and Emma Heath certain parts of the property identified as Item No. 1; to J. C. Waits a lot identified as Item No. 2; to J. S. Bates a part of Lot 20 identified as Item No. 3, and to Nick Kabouris Lot No. 3 identified as Item No. 4. By reason of these wrongful conveyances to *bona fide* purchasers Woodruff asserted that he had been damaged to the extent of $8,800, and asked judgment for that sum. This cause was transferred to equity.

It would unnecessarily burden this opinion and tax without reason the patience of those who must read it if we should set out in detail all of the pleadings as they have been abstracted. An exhibit is Woodruff's claim filed in Probate Court February 26, 1946, in the action

against Johnson as administrator. It listed the four items referred to in the Circuit Court action and alleged that the present values were respectively, $1,000, $300, $2,500, and $5,000. The contention was that Woodruff,. Sr., had been damaged in the sum of $800—his estate being for life—and that the minor children had been damaged $8,000.

In substance, the Chancellor found that Mrs. Cover's deed to the Woodruffs should be cancelled because not delivered; that the lease to Adams was effective, but the provision assigning rentals to Fred Woodruff, Sr., was void because contrary to public policy; that the Circuit Court action based upon Probate Court claim and consolidated in Chancery should be dismissed; and that those who bought from Mrs. Cover subsequent to her deed to the Woodruffs were innocent purchasers.

The decree expressly finds that after execution of the deed Mrs. Cover continued in possession. She paid all taxes and special assessments, had insurance written in her own name, and paid the premiums. Fred Woodruff, Sr., assisted her in making two of the sales and witnessed execution of the deeds. It was also found, contrary to Woodruff's contention, that he knew of the other sales.

It is our view that these findings—other than the one relating to payment of rentals under Adams' lease—are sustained by clear and convincing evidence. From appellants' standpoint the difficulty is that Mrs. Cover and Woodruff were wrong in assuming that title could be conferred with one hand and withheld by the other. It appears clear that Woodruff did not at any time question his aunt's continuing ownership; nor did he move in any manner to assert the rights he later claimed were his when seeking to recover for value of property sold.

Mrs. Riley Miller testified that shortly before August 31, 1945, Mrs. Cover asked her to write Stella Bynum in California. In the letter Mrs. Cover told Stella that if she would move back home—"meaning the home place or Lafayette Street property in Fayetteville"—and live

with her she (Mrs. Cover) would move back. Mrs. Cover also said she had a chance to sell for $9,000, but thought the property was worth $10,000. Fred Woodruff was present when this conversation occurred, and he knew what was in the letter to Stella Bynum. Mrs. Miller knew this to be true because after writing the letter she read it to Mrs. Cover in Woodruff's presence.

There was testimony that Mrs. Cover told friends the deed had been executed and that "Fred" had been told not to have it recorded because "taxes would be mixed up", etc. The facts are virtually conceded; hence the question is, What was the legal effect of admitted conduct?

There is a strong presumption in favor of a deed when it is shown to have been executed by a competent person not acting under compulsion or undue influence if the document remains in the hands of the grantee who is named. *Carter* v. *McNeal,* 86 Ark. 150, 110 S. W. 222; *Morton* v. *Morton,* 82 Ark. 492, 102 S. W. 213. Any disposal of a deed, accompanied by acts, words, or attended by circumstances clearly indicating that the grantor intended it should take effect as a conveyance, is a sufficient delivery. *Russell* v. *May,* 77 Ark. 89, 90 S. W. 617.

It is contended by appellants that the controlling fact is that Mrs. Cover had the deed delivered immediately to Woodruff and thereafter she did not, at any time, have manual possession of it. Conversely, it is conceded that she gave instructions the deed was not to be recorded. Can it be said, then, that delivery of the executed paper was delivery of title, and that by this act Mrs. Cover conveyed to Woodruff complete control of the property, free from any interest she formerly had in it? or is it not true that title was not intended to be passed until the grantor should die, and in the meantime she would be at liberty to deal as she saw fit? This view finds support in Mrs. Cover's decision to ask Stella Bynum to come live with her in the Fayetteville home place—the one remaining item not then sold. Nothing could be clearer than that until the very last her dominion was exclusive. Woodruff says he once remarked to his

aunt that she was selling too much property, and her reply was that proceeds would be retained for him. Even so, she asserted the right to sell in spite of the objection he offered, and he did not challenge the privilege she claimed.

This is not a case where the grantor, by express words in the deed, provided that it should take effect after death. See *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244. There the grantor named his wife as trustee, conveying the real property to her for life for her own use, with remainder as designated. Cribbs gave the deed to his wife, explained to her what his attorney had said in regard to its effect, told his wife to read it carefully, and then it was agreed that the granting husband should take the deed and put it in his safe. The Court held this was an effective delivery, saying: "Nothing is found in the law to prevent [the grantor] from accomplishing, by the execution of a deed immediately conveying the legal title in trust, the same result which would be secured by a will, if he adopted the proper form and method. We think he did this by the execution and delivery of the deed in centroversy".

In *Owen* v. *Owen,* 185 Ark. 1069, 51 S. W. 2d 424, it was said that a deed from father to son containing a covenant that the son should support the father and that the father should remain in possession, the deed to become operative after death, was good. That would be true in the instant case if the intent had been expressed. But it was not; nor can that purpose be inferred when it is conceded that the grantor was directed not to have the deed recorded, and was thereafter denied any interest in the property, other than rentals on the Adams tract.

There are many cases, some of our own, where retention of possession by the grantor has not been held controlling in determining what the intention was. *Johnson* v. *Young Men's Building & Loan Association,* 187 Ark. 430, 60 S. W. 2d 925; *Hunter* v. *Hunter,* 198 Ark. 8, 127 S. W. 2d 249.

In *Davis* v. *Davis,* 142 Ark. 311, 218 S. W. 827, Mr. Justice HART said: "In order to constitute [delivery of

a deed] there must be an intention to pass the title immediately, . . . and that the grantor shall lose dominion over the deed". In *Bray* v. *Bray*, 132 Ark. 438, 201 S. W. 281, there was testimony that the grantor gave the deed to the grantee, who later returned it. The grantor placed the deed in a trunk for safe keeping, an agreement being that "when the old man died" appellee was to open the trunk, get the deed, and have it recorded. It was held there was no delivery. The Court said: "We have said that the question of delivery is generally one of intention manifested by act or word, and that there is no delivery unless there is an intention upon the part of both of the actors in the transaction to deliver the deed in order to pass the title immediately, . . . and that the grantor shall lose dominion over the deed".

Delivery is sufficient if it is manifest that the grantor intended to part with the deed as an effective conveyance, and the question is largely one of intention upon the part of the grantor.—*Hardin* v. *Russell*, 175 Ark. 30, 298 S. W. 481. There is no delivery unless what is said and done by the grantor and grantee manifests their intention that the deed shall at once become operative to pass title, and that the grantor shall lose dominion over the deed.—*Ford* v. *Moody*, 169 Ark. 649, 276 S. W. 595. See, also, *Cavett* v. *Pettigrew*, 182 Ark. 806, 32 S. W. 2d 808; *Graves* v. *Carl'n*, 194 Ark. 473, 107 S. W. 2d 542; *Thomas* v. *Langley*, 200 Ark. 220, 138 S. W. 2d 380; *Van Huss* v. *Wooten*, 208 Ark. 332, 186 S. W. 2d 174, Many other cases are to the same effect.

We think the controlling question in the case at bar in so far as Woodruff's contentions are concerned is whether by any reasonable construction of the transaction he was justified in believing that title passed immediately. On a former occasion as has been shown, Mrs. Cover had deeded property to him, and at her request it was deeded back. There is little doubt this would have been Woodruff's course in respect of the last deed had Mrs. Cover made the request. If this is true, and if Mrs. Cover also intended to deal with the property

as she had done in the past, there was no delivery within the meaning of the law.

The Court erred in holding that Woodruff was not entitled to rentals on the Adams lease. The decree affirmed validity of the lease and protected Adams in his rights during remainder of the term, but as we have seen, there was a finding that the assignment of interest to Woodruff was violative of public policy. Mrs. Cover signed the lease, but did not sign the supplemental contract providing for repairs. The initial transaction discloses that Mrs. Cover signed by mark, and that Woodruff indorsed "Under power of attorney from Lessor". There can be no objection to the assignment of rentals to Woodruff under the evidence touching this agreement; hence the decree will be modified in a way to carry out the express terms, with Woodruff as the beneficiary. In other ways it is affirmed.