FLOYD BROOMFIELD & NANCY BROOMFIELD, ET AL *v.*
E. L. BROOMFIELD & ELLA MAY BROOMFIELD, ET AL

5-4154                                                     413 S. W. 2d 657

Opinion delivered April 17, 1967

*Shaw & Shaw*, for appellant.

*Shaver, Tackett & Jones*, for appellee.

JOHN A. FOGLEMAN, Justice. Appellants are two sons of Millard W. Broomfield joined by their respective wives. Appellees are another son, the son's wife and daughter, and the only daughter of the decedent.[1] Millard W. Broomfield died intestate on January 1, 1964 at the age of 85 years. This litigation commenced as a suit by appellants and other heirs with partition of seventy acres of land[2] being a part of the relief sought. This land was admittedly once owned by the decedent. Appellants contend that he owned the lands at the time of his death. Appellees ask confirmation of title in E. L. Broomfield and his wife and daughter, claiming that they are owners of the tract by virtue of conveyance to them by a warranty deed signed by M. W. Broomfield and bearing date of September 29, 1952. They say that this deed was delivered to appellee E. L. Broomfield in June, 1963, at the home of the decedent. Appellants contend that this deed was without consideration and never delivered by the decedent, and that he never intended to deliver it. They further contend that possession thereof was attained by the grantees by fraudulent and unlawful means. On disputed evidence, by a margin which he characterized as "razor-thin", the chancellor found that the weight of the evidence supported a finding that the deed was delivered by the decedent in his lifetime. A review of some of the evidence is necessary to the determination of this appeal on trial de novo.

It is undisputed that Millard W. Broomfield lived on the property for many years and continued to reside on the land in question and pay the taxes thereon until his death. The 1962 taxes were paid on September 19, 1963.

[1] There were other heirs with their respective wives who were plaintiffs. During the pendency of the action, one of these heirs died and his widow and heirs at law were substituted. None of these parties appealed.

[2] Other property was involved but there is no issue as to it on this appeal.

The deed was not recorded until January 31, 1964. The office manager for the Little River County Agricultural Stabilization and Conservation Office (ASC) for fifteen years testified that the decedent made applications for financial assistance in carrying out ASC farm programs. Two of these applications were signed by the decedent as owner in 1963, one in April and one in July. The records of the office showed that Millard W. Broomfield was the owner-operator of the farm. Appellees admit that the decedent carried on these transactions in this way for more than ten years prior to his death and do not contend that he ever relinquished control of the land during his lifetime. Appellee E. L. Broomfield seeks to explain this by saying that he retained a life estate in the property in his agreement with the E. L. Broomfield family. The deed contains no reservation of a life estate.

Ernie Crow, a witness for whose credibility both E. L. Broomfield and his counsel vouch, testified that he became interested in purchasing the farm in July, 1963. Upon inquiry of Millard W. Broomfield, he was told that he could buy the land for $9,000.00 and the cattle for $3,000.00. Broomfield said he would make a warranty deed to the place. Crow did not follow up because he didn't like the location and didn't think the house was good enough for the price. Appellee E. L. Broomfield tried to explain this by saying:

"He seemed to be just more or less seeing if he could get an offer of what his property was worth more than anything because he didn't sell it, didn't follow up the sale."

E. L. Broomfield testified that his father had the deed prepared and that he, his wife and daughter agreed to take care of the elder Broomfield, but the father was *to do anything he wished with the farm in his lifetime—* that he was to do what he pleased with the farm and handle it as he pleased. The agreement with his father was to become effective upon the latter's death. He said

that no one but he and his father were present when the deed was delivered in June, 1963, after his father had been to a doctor and thought he would not get well. His father told him not to record the deed until he passed away, and he agreed. He claims the deed, before delivery, was clipped to some papers on the wall in his father's room with a clothespin, but presumed that he kept his other valuable papers in his trunk. He told no one except his wife about the delivery of the deed, feeling that no one else should know of it. If his father had asked him for the deed back, he would have given it to him.

The only evidence of delivery of the deed is the testimony of E. L. Broomfield himself. He seeks to excuse the non-appearance of his wife, a party to the suit, who he said knew he had the deed in his possession, by saying that she had been sick for two days. The record does not reflect any effort to continue the case until she was able to testify, to give her deposition or otherwise offer her testimony, although the chancellor's written memorandum opinion shows that the parties, the attorneys, the judge and the court reporter went past the E. L. Broomfield residence to take the testimony of another witness. The failure of a party to testify in his own behalf is a suspicious circumstance against him when material facts within his own knowledge are charged against him in the pleadings and evidence. *Felton* v. *Leigh,* 48 Ark. 498, 3 S. W. 638. Failure of a party to an action to testify as to facts peculiarly within his knowledge is a circumstance which may be looked upon with suspicion by the trier of the facts. *Fordyce* v. *McCants,* 55 Ark. 384, 18 S. W. 371. Where the parties have it within their power to explain suspicious circumstances connected with a conveyance, the court trying the case may regard their failure to do so as a circumstance against them. *Smith* v. *Wheat,* 138 Ark. 169, 35 S. W. 2d 335. See, also, *Board of Commissioners of S. I. Dist. No. 359* v. *City of Little Rock,* 190 Ark. 27, 76 S. W. 2d 667. The unexplained failure of a party to produce a witness with special knowledge of a transaction, if within the power

of the party to do so, raises the presumption that he would testify against the party. *Rutherford* v. *Casey*, 190 Ark. 79, 77 S. W. 2d 58; *Jones* v. *Jones*, 227 Ark. 836, 301 S. W. 2d 737. Other cases hold that an inference follows that the testimony would have been unfavorable. See, e. g., *National Life Company* v. *Brennecke*, 195 Ark. 1088, 115 S. W. 2d 855. At any rate, it does not satisfactorily appear that the testimony of Ella May Broomfield could not have been obtained, so this factor weighs heavily against appellees in determining where the preponderance of the evidence lies.

As against the uncorroborated testimony of E. L. Broomfield, a vitally interested party, there is other testimony which, together with the acts of the decedent inconsisent with a delivery of the deed, seems to preponderate. Both Floyd and Wade Broomfield testified about the interest of the former's son in buying the land in November, 1963, and statements of the decedent with reference to such a sale. Both of them and the county welfare director testified that the father had made statements that if he gave anyone a deed to the place they would run him off. The statement to Wade was said to have been made while he was living with his father in 1963, up until October. According to Wade, his father kept his deeds, papers and money in a trunk. This trunk was opened in the presence of most of the family by J. B. Pond, a son-in-law of E. L. Broomfield, by cutting a hasp on the front. Shortly thereafter Pond pointed out to Wade Broomfield that the hinges on the back had been cut. It was admitted that Pond would testify that they appeared to have been freshly cut. There was also testimony that two straps had been put on the back of the trunk and that there were fresh marks on these straps which appeared to have been taken off and replaced.

In order for there to be a delivery of a deed, there must be an intention to pass title immediately and the grantor must lose dominion over the deed. This intention must be manifested by what is said and done by the

grantor and grantee. *Woodruff* v. *Miller,* 212 Ark. 191, 205 S. W. 2d 181; *Hunter* v. *Hunter,* 216 Ark. 237, 224 S. W. 2d 804; *Smith* v. *Van Dusen,* 235 Ark. 79, 357 S. W. 2d 22. Enough must be done to show that the instrument was considered to have passed beyond the grantor's control and dominion. *Graves* v. *Carlin,* 194 Ark. 473, 107 S. W. 2d 542; *Ransom* v. *Ransom,* 202 Ark. 123, 149 S. W. 2d 937.

In determining the intention of the grantor and whether dominion of the deed has been lost, acceptance of a deed with instructions not to record it during the lifetime of grantor and the exercise of dominion over the property by grantor are significant factors. *Woodruff* v. *Miller,* 212 Ark. 191, 205 S. W. 2d 181; *Graves* v. *Carlin,* 194 Ark. 473, 107 S. W. 2d 542. Of course, this would not be true in cases such as *Lindsey* v. *Christian,* 222 Ark. 169, 257 S. W. 2d 935, where the language of the deed had the effect of reserving a life estate.

The acts of a grantor in continuing to occupy the lands and exercising all the rights of unlimited ownership, including the payment of taxes, are contradictory to an intention to pass title immediately, an element necessary to establish delivery. *Smith* v. *Van Dusen,* 235 Ark. 79, 357 S. W. 22; *Ransom* v. *Ransom,* 202 Ark. 123, 149 S. W. 2d 937.

Cases such as *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244, relied on by appellees, where the grantor provides by express words in the deed that it shall take effect upon his death, have previously been distinguished from a case such as this, where an oral reservation is alleged, in *Woodruff* v. *Miller,* 212 Ark. 191, 205 S. W. 2d 181.

The case of *Johnson* v. *Young Men's Building & Loan Assn.,* 187 Ark. 430, 60 S. W. 2d 925, also relied upon by appellees, has many distinctions. There the deed was attacked as fraudulent by subsequent creditors rath-

er than those who would have inherited the property. The husband and wife grantors had acquired the property as tenants by the entirety, investing funds of both, as well as some belonging to their only son, then a minor. They desired to destroy the effect of these tenancies so that upon death of either, his or her interest would not pass to the other but to the son. The wife had died before the suit was instituted. The father testified that they operated the property for the son for many years. The deed was placed in a safe to which all three had access and the matter was fully explained to the son by the wife. Advice of eminent counsel was had in the preparation of the deed. After the death of the wife, the deed was placed of record and the son gave his father a power of attorney. The father testified that they always conferred with the son about the business interests. The bank account was put in the son's name about the same time the deed was recorded and the power of attorney apparently authorized the father to draw checks thereon. The court accepted the failure to have the deed recorded as being consistent with the purpose of the grantors to retain possession and control of the property until the death of one of them. It also said that a retention of such control under these circumstances was not always inconsistent with the grant or intention of delivery of the deed. We feel that this case is distinguishable upon these peculiar facts. Insofar as it may appear to be in conflict with later cases herein cited, we think the latter state the proper rules applicable to a case such as this.

This case is strikingly similar to *Ransom* v. *Ransom*, 202 Ark. 123, 149 S. W. 2d 937, where counsel for the grantee in a deed purporting to convey title outright conceded that his client did not expect then or thereafter to take possession of any of the land unless something happened to the grantor; that the grantor intended to keep his land as long as he lived and to do what he pleased with it; that grantee would not have interfered with grantor's collection of rents and profits;

and that grantee was not to get the lands until something happened to grantor. There this court reversed the finding of the chancellor that there had been a delivery of the deed in question. There is also a close parallel to *Woodruff* v. *Miller,* 212 Ark. 191, 205 S. W. 2d 181, where a finding against delivery was affirmed. This court has never upheld a deed when (1) the parties did not intend to pass title immediately and (2) the grantor never lost dominion over the deed.

When tested by the established rules of law, hereinabove set out, we think the evidence that there was no delivery of the deed is clear, decisive and convincing and the finding of the trial court clearly against the preponderance of the evidence.

The decree is reversed and the cause remanded for the entry of a decree in conformity with this opinion.