Willie Kent GRIMMETT *v.* ESTATE OF Ruby G. BEASLEY

CA 89-59                          777 S.W.2d 588

Court of Appeals of Arkansas
Division II
Opinion delivered October 11, 1989

*Matt Keil*, for appellant.

*Edward F. Cochran*, for appellee.

JOHN E. JENNINGS, Judge. This case is a dispute, in probate court, over the ownership of a 120 acre farm in Lafayette County, Arkansas. Appellant, W.K. Grimmett, Jr., is one of the nephews of Ruby G. Beasley. The issues presented are the legal effect of a deed executed by Mrs. Beasley to W.K. Grimmett, Sr., and his wife, Violet, and whether that deed had been delivered. The chancellor found that the deed, by its own terms, conveyed nothing until Mrs. Beasley's death and also found that there was no delivery. We reverse and remand.

W.K. Grimmett, Sr., was the brother of Ruby Beasley and the father of the appellant here. Sometime during the mid-1970's W.K. Grimmett, Sr., began working his sister's 120 acre farm. In July of 1974, Mrs. Beasley paid approximately $5,000.00 for a John Deere tractor. The purchase order lists both W.K. Grimmett, Sr., and Ruby Beasley as purchasers but was signed by Mr. Grimmett only. The tractor was delivered to Mr. Grimmett at the farm.

The appellant testified that in mid-March of 1975, Mrs. Beasley came to his parents' house. At this point it is necessary to explain that three versions of the deed in question appear in the transcript. The typewritten language of each deed is identical. Each purports to convey the 120 acre farm and the John Deere tractor to W.K. Grimmett, Sr., and his wife, Violet. Each contains the clause: "This deed is to become effective upon the death of the grantor herein." The copy of the deed referred to at trial as the "original" is signed by Mrs. Beasley, dated March 12, 1975, and notarized. It apparently has never been filed for record in the county deed records. This deed was found by Mr. Kelley, Mrs. Beasley's lawyer, after her death in her personal effects.

The deed introduced as Plaintiff's Exhibit 3 bears Mrs. Beasley's original signature, but is not notarized or dated, except for the year, 1975. This deed was found in Violet Grimmett's safety deposit box at the Bank of Bodcaw after her death in 1985. (W.K. Grimmett, Sr., died in 1984.)

The deed introduced into evidence as Plaintiff's Exhibit 4 also appears to bear Mrs. Beasley's original signature, is dated March 12, 1975, but again is not notarized. This deed was found in a lock box in a closet at the W.K. Grimmett, Sr., home after Violet Grimmett's death.

The appellant testified that in mid-March of 1975, Mrs. Beasley came to his parents' house with the "original" deed. He testified that his parents had that deed in their possession on that day and that Mrs. Beasley took it with her when she left, saying she would put it in her lock box at the Bodcaw Bank, and left them with a "copy." Appellant also testified that it was common knowledge that Mrs. Beasley intended for the farm to eventually pass to him and then on to his own son, Vince Grimmett. He testified that she encouraged him and his wife to build a house on the farm. Lelia Boulware, Wilma Wilbanks, and Alma Hairr all testified that Mrs. Beasley wanted the farm to go, eventually, to W.K. Grimmett, Jr.

Mr. William Kelly, an attorney, testified that he drafted Mrs. Beasley's last will, which was dated June 10, 1983. The will contained a provision leaving the 120 acre farm in question to W.K. Grimmett, Sr., and his wife and made the two of them the residuary beneficiaries for her estate. When Mrs. Beasley died in 1987, W.K. Grimmett, Sr., and his wife had predeceased her; therefore, the devise lapsed. *See Eckert Heirs* v. *Harlow, Ex'r.,* 251 Ark. 1018, 476 S.W.2d 244 (1972).

Mr. Kelly testified that he advised Mrs. Beasley that she still owned the farm and he said that she wanted to maintain ownership of it in case she ever needed money for medical expenses. Mrs. Beasley paid property taxes and the insurance on the farm, and Mr. Kelly testified that she collected $600.00 a year as rent on the farm. He also said that she paid personal property taxes on the tractor and took its depreciation as a tax deduction. He testified that he found the notarized deed in Mrs. Beasley's effects after her death. Kelly testified that Mrs. Beasley told him

she had not "delivered" the deed, but he also testified that he assumed it had not been delivered because it had been found in her belongings after her death. He was unaware of any other versions of the deed. He also testified that by the deed she was attempting to reserve a life estate.

Billy Grimmett, another of Mrs. Beasley's nephews, testified that Mrs. Beasley once said, "y'all will own the farm." Bobby Grimmett, another nephew, testified that Mrs. Beasley gave him the impression that she still owned the farm.

After having heard this evidence, the chancellor held that the deeds, "by their own terms, do not convey anything until [Mrs. Beasley's] death." It appears from the judge's comments from the bench that he believed W.K. Grimmett, Jr.'s testimony that Mrs. Beasley had passed the "original" deed around to Mr. Grimmett, Sr., and his wife before Mrs. Beasley left with it in her possession. But it is also apparent that the court relied on the fact that the notarized deed was found in Mrs. Beasley's possession after her death and that she had continued to pay taxes and insurance on the property during her lifetime in arriving at his conclusion that there had been no delivery.

We are persuaded that the chancellor was mistaken in his view of the law applicable to the facts in the case at bar. The chancellor's statement that the language of the deed in question conveys nothing until the grantor's death runs afoul of the holdings of the Arkansas Supreme Court. *See, e.g., Lindsey* v. *Christian*, 222 Ark. 169, 257 S.W.2d 935 (1953); *Smith* v. *Smith*, 218 Ark. 228, 235 S.W.2d 886 (1951); *Owen* v. *Owen*, 185 Ark. 1069, 51 S.W.2d 524 (1932). The effect of the provision in the deed here, that "this deed is to become effective upon the death of the grantor herein," which is virtually identical to the language in the deed in *Smith, supra*, is to convey the fee simple title subject only to the reservation of a life estate in the grantor.

As to the issue of delivery, if we concern ourselves for the moment only with the question of the delivery of the notarized deed (referred to as "the original" in the proceedings below), we are persuaded that the chancellor followed the general rule applicable to the delivery of a deed instead of the rules applicable when the grantor reserves a life estate. In order to establish delivery it ordinarily must be shown that the grantor relinquished

his dominion and control over the instrument. *See Adams* v. *Dopieralla,* 272 Ark. 30, 611 S.W.2d 750 (1981); *Ransom* v. *Ransom,* 202 Ark. 123, 149 S.W.2d 937 (1941). Ordinarily the grantor's continued use of the property and the payment of taxes on it are evidence that would tend to rebut a claim of delivery. *See Adams, supra; Broomfield* v. *Broomfield,* 242 Ark. 355, 413 S.W.2d 657 (1967). In addition, when the deed is found in the possession of the grantor at his death, normally there is a presumption of non-delivery. *See Van Huss* v. *Wooten,* 208 Ark. 332, 186 S.W.2d 174 (1945).

■ However, when the deed reserves a life estate in the grantor (as it does here by operation of law), different rules apply. There is no longer a requirement that it must be shown that the instrument has passed beyond the grantor's control and dominion. *See Broomfield, supra* at 360. The fact that the deed is found among the effects of the grantor at his death raises no presumption against delivery when a life estate is reserved, *see Johnson* v. *Young Men's Building & Loan Association,* 187 Ark. 430, 60 S.W.2d 925 (1933), and under these circumstances the grantor's retention of possession and control over the property conveyed and his failure to record the deed are not inconsistent with delivery. *See Cribbs* v. *Walker,* 74 Ark. 104, 85 S.W. 244 (1905); *Johnson, supra.* The facts in *Cribbs* bear a marked similarity to those in the case at bar. There the husband had executed a deed in favor of his wife, reserving a life estate. Her testimony was that he showed her the deed, let her read it, and then took it back and put it in his safe where it remained until his death. The supreme court reversed the chancellor's decision and held, on *de novo* review, that there had been an effective delivery. The court's decision in *Broomfield, supra,* indicates that the distinction made in *Cribbs* is still a valid one.

■ Finally, because of the court's characterization of plaintiff's exhibits numbered three and four as "copies," we are uncertain that the court gave adequate consideration to the fact that both instruments appear to bear original signatures, or that the court gave consideration to the question of whether those instruments were delivered, and, if so, the effect of that delivery. Even a deed that is undated and unacknowledged effectively passes title, as between the parties, from the date of delivery. *Harvey* v. *Ledbetter,* 219 Ark. 27, 240 S.W.2d 18 (1951).

In sum, we are persuaded that the chancellor was mistaken in his view of the law. Under all the circumstances of this case, and particularly because issues of credibility may enter into the decision here, we think it best to remand the case to the chancellor for further proceedings consistent with this opinion, rather than to decide the factual issues *de novo.*

Reversed and Remanded.

CORBIN, C.J., and MAYFIELD, J., agree.